UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

NEAL E. WAANANEN                    :
                                    :
VS.                                 :        NO. 3:02CV2307(JBA)
                                    :
TIMOTHY BARRY,                      :
EDWARD LYNCH,                       :
JOHN REARICK and                    :
SUE KUMRO                           :        MARCH 22, 2004

## **BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

The plaintiff is a Master Sergeant with the Connecticut State Police and

Executive Officer (*i.e.*, second in command) of one of the State Police Barracks.

He has served more than twenty years and held the same position at the time of

the events at issue in this case.

The events giving rise to this litigation have their genesis in a painful but

routine divorce. The plaintiff and his then-wife were undergoing the conflicts and

stresses typically attendant upon a divorce when young children are involved.

She left to go to her parents, he locked her out, both were upset, officious friends

and relatives chose to inject their opinions, harsh words were spoken, the

children cried. This case became different, and thus a federal matter, because

the defendants – all of whom are ranking State Police officials – overreacted and

ignored the rules when the plaintiff's wife and an interloper telephoned one of the plaintiff's subordinates to complain.

The following brief summary of the facts in this case is supported by the more detailed explanation of the facts, with evidentiary citations, set forth in the plaintiff's Local Rule 56 Statement, submitted herewith along with supporting evidence.

In the course of the verbal arguments outlined above, the plaintiff's wife and a neighbor telephoned a Trooper Tilley, one of the plaintiff's subordinates known to harbor a grudge against the plaintiff because of a golfing dispute. They claimed that the plaintiff was locked in the family home with his son, acting irrationally. Tilley immediately contacted defendant Kumro, who was the head of the State Police employee assistance program. In violation of the rules and regulations governing that program, Kumro proceeded to notify the plaintiff's superior, defendant Lynch. Defendant Lynch also elected not to investigate but instead passed the matter on unverified to defendant Barry, who was the commander of the plaintiff's region and second-in-command in the State Police Structure. He and his immediate subordinate, defendant Rearick, mobilized a large force of state and local police officers, surrounded the plaintiff's house with SWAT team members and other armed officers, accompanied by television crews and other news persons, and sent two Lieutenants inside. They quickly ascertained that nothing was amiss. The plaintiff was entirely rational. He and

his son were about to eat a pizza and were working together on the family computer.  They so advised defendants Barry and Rearick, but to no avail.  Barry ordered the plaintiff out of the house and into custody.  It became clear to both Barry and Rearick, at that point, that, in Rearick's words to Barry: "Looks like you've been played, sir."  Unwilling to admit that he had been made a patsy, Barry ordered the plaintiff transported involuntarily and in the custody of his superior officer to a psychiatric hospital for examination.  After a three-hour custodial examination, the treating psychiatrist informed the plaintiff that what he needed was not a psychiatrist but "a good lawyer."  The plaintiff was discharged.  Barry and Rearick, however, ordered that he not return to the family home.  He never slept under that roof again.  Meanwhile, Barry and Rearick had ordered the seizure of the plaintiff's two handguns, used solely in his law enforcement duties, and required him to work unarmed.  Contrary to law and regulation, no written record of any of these events ever was made by anyone in the State Police, except for the overtime pay records of the SWAT team members.

The plaintiff has sued the defendants for participating in an unreasonable, warrantless search and seizure of his person and property, in violation of the Fourth Amendment.  The defendants have moved for summary judgment.  The defendants contend that all of the defendants except Lt. Col. Barry had no personal involvement in the above-described events and that Barry did not personally conduct the search of plaintiff's home.  The defendants also argue

that the plaintiff and his then-wife both consented to the search of the family home.  The defendants further contend that defendant Barry's order for a custodial psychiatric examination was reasonable.  Finally, the defendants claim benefit of the affirmative defense of qualified immunity.

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is

presented,' for the non-movant is not required to rebut an insufficient showing."
Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting*
Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party
bears the ultimate burden of establishing its right to summary judgment as a
matter of law even when it does not have the ultimate burden of persuasion at
trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir.
2003).

When passing upon a motion for summary judgment, the court may not
resolve factual disputes or make credibility determinations, even if the case is
one which eventually will be tried without a jury. In re Unisys Savings Plan
Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any
ambiguities and draw all inferences against the moving party. Appleton v. Board
of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles
Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party
against whom summary judgment is sought must be believed. Revak v. SEC
Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence
in the light most favorable to the party opposing summary judgment and deny the
motion unless no construction of the evidence could support judgment in the
plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144,
157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir.
1993); United States v. Certain Funds on Deposit in Scudder Tax Free

Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

    To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

    Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211

(2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238

(3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that

a reasonable jury could return a verdict for the non moving party.' Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, '[i]f, as to the issue on

which summary judgment is sought, there is any evidence in the record from

which a reasonable inference could be drawn in favor of the opposing party,

summary judgment is improper.'"  Lazard Freres & Co. v. Protective Life Ins. Co.,

108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d

98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or

state of mind are at issue, summary judgment should be used sparingly."

Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D.

Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108,

1114 (2nd Cir. 1988).

There is no argument from the defense about the fact that defendant

Barry personally ordered the involuntary transportation and custodial psychiatric

examination of the plaintiff.  Barry did not personally conduct the search of

plaintiff's house, and did not personally seize his two handguns, but was the

officer in charge at the scene.  Defendant Rearick also was personally present,

as a high-ranking officer, at all three of the above-described events.  Defendant

Kumro was personally present at the custodial psychiatric exam.  Defendants Kumro and Lynch participated in the chain of communications or mis-communications leading to the dispatching of the SWAT team and all the events which injured the plaintiff.  Police officers, unlike civilians, have an affirmative duty to enforce the law.  That duty includes an obligation to prevent fellow officers from committing illegal actions.  An officer who is in a position to prevent another officer from violating the plaintiff's constitutional rights, but fails to do so, is jointly liable.  Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982); O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988); Ricciuti v. New York City Transit Authority, 124 F.3d 123, 129 (2d Cir. 1997); McHenry v. Chadwick, 896 F.2d 184, 18f8 (6th Cir. 1990); Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 477-78 (7th Cir. 1997); Yang v. Hardin, 37 F.3d 282 (7th Cir. 1994); Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972); Webb v. Hiykel, 713 F.2d 405 (8th Cir. 1983); Mick v. Brewer, 76 F.3d 1127 (10th Cir. 1996); Fundiler v. Cooper City, 777 F.2d 1436, 1441 (11th Cir. 1985); Jonelis v. Russo, 863 F. Supp. 84, 87 (D. Conn. 1994).  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence....An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used...; (2) that a citizen has been unjustifiably arrested...; or (3) that any constitutional

violation has been committed by a law enforcement official....In order for liability

to attach, there must have been a realistic opportunity to intervene to prevent the

harm from occurring....Whether an officer had sufficient time to intercede or was

capable of preventing the harm being caused by another officer is an issue of

fact for the jury unless, considering all the evidence, a reasonable jury could not

possibly conclude otherwise." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir.

1994).

        Police supervisors can be held liable for unconstitutional actions of their

subordinates, even in their absence, under standards not unlike those used to

impose liability upon municipalities.  Thus, a supervisor will be jointly liable if she

failed to properly supervise the offending officer and such failure was deliberately

indifferent to the probable consequences or constituted an implicit authorization

of such consequences.  Andrews v. Fowler, 98 F.3d 1069 (8th Cir. 1996).  A

supervisor's "liability can arise out of participation in a custom that leads to a

violation of constitutional rights... or by acting with deliberate indifference to the

constitutional rights of others...." Diaz v. Martinez, 112 F.3d 1, 4 (1st Cir. 1997).

Personal participation in the wrong, directing subordinates to perpetrate the

wrong, or being aware of the wrongdoing and acquiescing in it must be proved to

establish supervisory liability.  Robinson v. City of Pittsburgh, 120 F.3d 1286,

1293 (3d Cir. 1997).  However, a supervisor will be liable if he "set in motion a

series of acts by others, or knowingly refused to terminate a series of acts by

others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  "A supervisor can be liable in his individual capacity 'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation...; or for conduct that showed a reckless or callous indifference to the rights of others.'" Id., quoted in Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998). The Second Circuit requires evidence that the supervisor "directly participated" in the constitutional violation, which the court defines as "personal participation by one who has knowledge of the facts that rendered the conduct illegal."  (The court has "express[ed] no view as to whether it includes also one who should have known.") Provost v. City of Newburgh, 262 F.3d 146, 155 (2nd Cir. 2001). The Second Circuit has disclaimed liability based only on "gross negligence" or "deliberate indifference" but has allowed liability of a supervisor who participates in the violation indirectly "such as ordering or helping others to do the unlawful acts...." Ibid.

"[S]upervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he 'may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness.'...To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or

constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk....[T]he plaintiff must 'affirmatively connect the supervisor's conduct to the subordinate's violative act or omission.'...This affirmative connection need not take the form of knowing sanction, but may include tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct." Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998). Quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576 (1st Cir. 1994); Manarite v. City of Springfield, 957 F.2d 953 (1st Cir. 1992). See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42 (1st Cir. 1999). "[L]iability attaches if a responsible official supervises...a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation....[A] supervisor may be brought to book even though his actions have not directly abridged someone's rights; it is enough that he has created or overlooked a clear risk of future unlawful action by a lower-echelon actor over whom he had some degree of control." Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999).

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort....We have held that a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such

wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury....[A] supervisor may be liable for failing to screen or otherwise inquire about his subordinates or into their actions....for a supervisor to be liable under section 1983 for his failure to inquire, he must first have been on notice that his subordinate was prone to commit some unconstitutional or unacceptable behavior.  Such notice could be actual (for example, awareness of prior deprivations in a related context), or it could be constructive (for instance, notice arising from a preexisting duty)."  Poe v. Leonard, 282 F.3d 123, 140-41 (2nd Cir. 2002).

Defendants in this case who did not directly participate in the violation of the plaintiff's Fourth Amendment rights are liable, as well, on a civil conspiracy analysis.  A civil conspiracy can be proved entirely by circumstantial evidence, at least as easily as a criminal conspiracy.  Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979); Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971); Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283 (9th Cir. 1999); Fisher v. Shamburg, 624 F.2d 156, 162 (10th Cir. 1980); Rutledge v. Electric Hose & Rubber, 327 F. Supp. 1267, 1273 (C.D. Calif. 1971); Lyle v. Teresi, 327 F. Supp. 683, 684 (D. Minn. 1971).

"Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design, and to pursue it by common means.  If it is proved

that the defendants pursued by their acts the same object, often by the same means, one performing one part and another part of the same, so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object." Regina v. Murphy, 8 C. & P. 297, 310 (1837) (Coleridge, J.).  See Pierce v. United States, 252 U.S. 239, 250 (1919).

The leading case on Section 1983 conspiracies is Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).  The plaintiff in that case had participated in a sit-in demonstration to protest the segregation of a public library.  After the police chief told the group that the library had been closed, the group crossed the street to purchase lunch at the defendant's lunch counter.  The plaintiff alleged that a police officer entered the store and observed the integrated group sitting together.  Shortly thereafter, a waitress refused service.  Upon leaving the restaurant, the plaintiff was arrested on a false charge of vagrancy by the same officer who had observed her at the lunch counter.  In support of its summary judgment motion, the defendant presented affidavits of its manager and employees attesting that they had not seen or communicated with any police officer.  Reversing the order granting summary judgment, the Supreme Court (Harlan, J.) held that the mere presence of the officer was sufficient to permit an inference of conspiracy.  "If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances

that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service." 398 U.S. at 155. Conspiracies typically must be proven by inference from such concurrent conduct and proof in that manner is entirely sufficient. Thus, the fact that police officers investigating an automobile accident who permitted the wrongdoers to leave the scene during the investigation without submitting to alcohol testing, combined with their failure to conduct other basic on-site investigative procedures, permitted an inference of a conspiracy between the investigating officers and the drunken drivers to cover up the wrongdoing of the latter in violation of the victims' First Amendment right of access to the courts. Delew v. Wagner, 143 F.3d 1219 (9th Cir. 1998).

Under these approaches, defendant Barry clearly is liable for the search and seizures in the plaintiff's house, conducted under his command and in his presence. Defendant Rearick, present throughout all these violations, knew there was no basis for the police action but did not intercede to stop it. Defendants Kumro and Lynch personally set in motion the chain of events leading to these violations and in doing so at a minimum acted with deliberate indifference to the consequences of their actions. All, therefore, are liable.

The claim that the plaintiff consented to any of the Fourth Amendment invasions in this case is refuted by his contrary testimony. This is a fact issue for the jury to resolve.

The burden of proving a valid consent to a warrantless search rests upon the party asserting it.  United States v. Miller, 146 F.3d 274 (5th Cir. 1998); United States v. Ivy, 165 F.3d 397 (6th Cir. 1998); United States v. Buchanan, 904 F.2d 349 (6th Cir. 1990); United States v. Shaibu, 920 F.2d 1423 (9th Cir. 1990).  For a consent to be valid, it must be free from any coercion, and coercion exists when officers demand entry as distinguished from requesting it.  United States v. Tobin, 890 F.2d 319 (11th Cir. 1989).  Similarly, any "consent" obtained through the explicit or implicit demands of officers purportedly exercising their authority is not true or valid consent.  See, e.g., Florida v. Bostick, 501 U.S. 429 (1991); United States v. Drayton, 231 F.3d 787 (11th Cir. 2000); United States v. Guapi, 144 F.3d 1393 (11th Cir. 1998); United States v. Tobin, 890 F.2d 319 (11th Cir. 1989).  Mere passivity in the face of an official demand does not constitute consent.  "The law obviously does not insist that a person assertively clutch an object in order to retain the protection of the fourth amendment." United States v. Thomas, 864 F.2d 843, 846 (D.C. Cir. 1989), quoted in State v. Edwards, 214 Conn. 57, 75 (1990).

"Judicial concern to protect the sanctity of the home is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority....In examining whether a person's invitation to the police 'to go right ahead and search the whole place,' could, in context, be considered effective consent, this court established the following burden for the

government:  The government must prove that consent was given.  It must show that there was no duress or coercion, express or implied.  The consent must be 'unequivocal and specific' and 'freely and intelligently given'.  There must be convincing evidence that defendant has waived his rights.  There must be clear and positive testimony.  'Courts indulge every reasonable presumption against waiver of fundamental constitutional rights.'  Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact.

"Although this court has acknowledged that '[u]nder some very limited circumstances...courts will infer consent from the cooperative attitude of a defendant,'...in fact this court has never sanctioned entry to the home based on inferred consent."  United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990) (citations omitted).

Whether the plaintiff's former wife had power to consent to the entry and search of the plaintiff's home in her absence is an issue this court need not decide, because she clearly did not have power to consent to the seizure of the plaintiff's property.

The seizure of the plaintiff's person and his involuntary transportation to a psychiatric facility for custodial examination is covered both by the Fourth Amendment and, as defendants acknowledge, by Section 17a-508(a) of the general statutes.  A police officer, like defendant Barry, may order such an

intrusion only if he has "reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself...or others or gravely disabled, and in need of immediate care and treatment...."  The defendants have presented no evidence remotely reaching this level and the plaintiff's evidence – which the court must credit on the present motion – clearly refutes it.  In Major Rearick's words:  "Looks like you've been played, sir."  Defendant Barry responded: "That remains to be seen."  (Plaintiff's deposition transcript, p. 216)

All warrantless searches and all warrantless seizures of the person are, by definition, unreasonable and violate the Fourth Amendment absent an exception to this general rule.  The burden of proving the existence of a valid exception to this general rule rests on the party claiming that exception.  Coolidge v. New Hampshire, 403 U.S. 443 (1971); Stoner v. California, 376 U.S. 483 (1964); United States v. Jeffers, 342 U.S. 48 (1951).  "[T]he general requirement that a search warrant be obtained is not lightly to be dispensed with, and 'the burden is on those seeking [an] exemption [from the requirement] to show the need for it....'"  Chimel v. California, 395 U.S. 752, 762 (1969).  Quoting United States v. Jeffers, 342 U.S. 48, 51 (1951).

The warrant requirement may be dispensed with only when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action."  United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983).  The courts will not readily find the existence of such exigencies.  They

are truly an exception to a rule of general application too important to be lightly disregarded.  See United States v. Santa, 236 F.3d 662 (11th Cir. 2000).

   The defendants claim qualified immunity.  But there is nothing novel or new about the specific rules of law banning exactly the conduct in which these defendants engaged.  "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct...; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken."  O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2nd Cir. 2003) (citations, quotation marks and ellipses omitted).  The defendants have the burden of proving their entitlement to such immunity.  Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800 at 815 (1982); Schechter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Castro v. United States, 34 F.3d 106, 111 (2d Cir. 1994).  They have not sustained it, and cannot, in this case.

   The motion for summary judgment must be denied.

Respectfully submitted:


_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX:  203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney


CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Joseph A. Jordano, Esq., Assistant Attorney General, P. O. Box 120, Hartford, CT 06141-0120.


_____
JOHN R. WILLIAMS