(d)  **Form DPS-323-C, RRES (Hate Crimes) Report**
Distribute this form as follows:

1.  Original report to Reports & Records with the completed case report;

2.  One copy to Crimes Analysis;

3.  One copy to troop files.

(e)  **Form DPS-1068-C, Field Intelligence Report**
Distribute this form as follows:

1.  Original to CCIU;

2.  One copy to troop files.

**12.3.3**  <u>**Use Of Report Forms**</u>
CALEA 82.2.1d
CALEA 42.1.3b  a.  <u>**Form DPS-683-C**</u>
CALEA 82.2.1b    This form shall be used to:

(1)  Document an initial investigation, to report changes or additions to information in block sections;

(2)  To close or suspend a report whenever there are changes or additions to be made in the block sections;

(3)  To reopen a previously closed case whenever there are changes or additions to the block sections.

(4)  **Most initial investigation reports will use Form DPS-683-C**
Initial reports will be submitted on Form DPS-683-C, for the following types of investigations:

(a)  Any crime as defined by state statute;

(b)  Statutory violations including status offenses;

(c)  Violation of town ordinances;

(d)  Motor vehicle incidents initiated by a complaint;

(e)  An untimely death;

(f)  Any accident resulting in death, serious physical injuries or serious property damage *by any cause other than a traffic accident*;

(g)  Lost, found or impounded property; or

(h)  Other incidents which requires documentation as determined by the commander or shift supervisor.

⌈CH#109  (5)  **Assist case reporting**

(a)  **Assisting department investigators**
Assisting another trooper with a department investigation is not an assist case, but is work complementary to the investigation shall be reported on a supplemental report.

(b)  **Recovery of property stolen in another jurisdiction**
Assist cases in which property is recovered for another police department shall be fully reported whenever possible.

(c)  <u>Assist to Other Agency case reporting</u>
In some circumstances participation in investigative activities may only be cursory or not amenable to full reporting.

Example
Rhode Island SP asks for assistance with a burglary and larceny located in Rhode Island.  After assisting, department investigators make no arrests, recover no evidence but wish to account for expended time and document any actions taken.

1.    Normally, if a case report identifies a burglary and larceny, certain data fields must be completed before the report is entered into or retrieved from SPRAMIS.

2.    If required information is not available or the involvement of the department is limited, an investigator may entitle the report "Assist to Other Agency" using a noncriminal UCR code of 990 with the concurrence of the supervisor or commander.

3.    All assist activity could then be documented by requesting a list of assist cases for the command or by calling up a specific report using a known case number.

4.    Assist to Other Agency reports may be used in conjunction with a department investigative report and case number when the suspect is also arrested for a crime committed in Connecticut.

[a]    A suspect arrested for a murder in Rhode Island will be reported as an assist case (UCR-990).

[b]    If the suspect is in possession of evidence which is also contraband, then a new criminal incident number will reflect this additional arrest and all pertinent information can be used.

5.    Close Assist to Other Agency case reports as suspended (3) or no criminal aspect (6).

(6)  Form DPS-683-C is a single-write report that may be handwritten in the field and completed in accordance with Section 12.3.2.

(7)  Form DPS-683-C ensures the collection of detailed information in a uniform, accurate and timely manner, which:

(a)  Enables the court system to prosecute criminal cases;

(b)  Satisfies requests for copies of investigative reports from interested or involved persons;

(c)  Enables the federal government to collect statistics on crimes committed in Connecticut;

(d)  Enables the department to gather information to determine resource needs and the proper deployment of troopers;

CALEA 82.3.1    (e)  Allows field troopers to query against a master name file for persons previously involved in suspicious or criminal incidents;

(f)  Enables investigators to develop suspects for ongoing investigations or to identify repeat offenders; and

(g)  Provides documentation to justify requests for additional personnel and funds.

(h)    Supplies SPRAMIS information
SPRAMIS capabilities are directly dependent upon the information that troopers cause to be entered into it.

    1.    If troopers consistently and accurately report information, output information will be accurate.

    2.    The biggest obstacle to accuracy is the lack of legibility of a written report.

b.    **Form DPS-302-C**
This form may be used with Form DPS-683-C as follows:

(1)    Whenever reporting action taken to assist another investigator;

(2)    To report supplemental case information when there are no changes or additions to the block section of Form DPS-683-C;

(3)    To report personnel investigations; Form DPS-302-C is not lined for typewritten reports and sketch maps, etc., while Form DPS-302-C-1 is lined and can be used to hand write reports.

(4)    To close a case when no block information is added or changed in the block section of Form DPS-683-C.

c.    **Form DPS-159-C**

(1)    This form completes an initial report concerned with missing persons, runaways, lost children and juvenile escapees and is designed to speed entry of information into SPRAMIS instead of using Form DPS-683-C.

(2)    Form DPS-683-C may be used to report additional information or other information not contained on Form DPS-159-C.

(3)    Whenever a child is a runaway from an institution, Form DPS-159-C is usually completed by a staff member of the institution as the initial report.  Closing the report requires Forms DPS-683-C or DPS-302-C.

d.    **Form DPS-241-C**

(1)    This supplement form captures lead information regarding persons listed on Form DPS-683-C and facilitates entry of names into SPRAMIS.

(2)    Case status using this report is active, closing the case requires Forms DPS-683-C or DPS-302-C.

e.    **Form DPS-159-C Initial Missing Person Report**

(1)    Form DPS-159-C is used as an initial report and will replace Form DPS-683-C for a runaway juvenile, lost child, juvenile escapee or a missing person.

(2)    If a missing person complaint involves a criminal complaint, i.e., the person and family car is missing and it is likely that the missing person has taken it, two case numbers shall be taken and cross referenced between the missing person complaint and the criminal complaint.  This will allow both cases to be independently reported and resolved and not be merged as one case.

(3)    Investigations using Form DPS-159-C are open cases and must be closed by use of Form DPS-683-C or Form DPS-302-C.

(4)    Definitions

    (a)    **Runaway Juvenile (UCR #290)**
A runaway juvenile is a child, aged 15 or less, who has run away from the parental home or place of residence.

        1.    Depending upon circumstances and the judgment of the officer, a referral shall be made to Superior Court for juvenile matters.

        2.    Case reporting will conform to a standard criminal investigation format except to use Form DPS-159-C for the initial report to assist with reporting required information.

        3.    A 16 or 17 year old youth reported as a runaway is neither a juvenile nor a member of a Family With Service Needs (FWSN), but should be handled in similar manner as an adult missing person (Sec. 46b-120, C.G.S.)

        4.    Be aware of significant mental or emotional factors attendant to juveniles and youths and make reasonable attempts to locate them and submit timely and necessary information to NCIC, other resources and agencies.

        5.    For further guidance on how to investigate these matters refer to Section 19.1.21.

    (b)    **Lost Child (UCR #990)**

        1.    A lost child is defined as a child who has wandered away from a home or institution and become lost and usually involve younger minors.

        2.    This report should be filed and acted upon immediately upon complaint - Do not wait 24 hours before investigating.

    (c)    **Missing Person (UCR #990)**
A missing person is a person aged 17 years or more who is reported as missing from their place of residence by a concerned complainant.

    (d)    **Juvenile Escapee (UCR #260)**

        1.    A juvenile escapee is any juvenile or youth sentenced or remanded to the custody of an institution and reported missing by staff members of the institution.

        2.    Institution staff members reporting an escape will complete Form DPS-159-C and the investigator shall submit completed reports as soon as possible to allow timely entry into computerized systems.

        3.    For juvenile escapee cases (under 16),if the child was committed for a status offense crime pursuant to 46b-120 C.G.S. and refuses to be returned, refer to Section 19.1.21.

(5)    **Completing missing person reports**

    1.    Completion of the report is self explanatory and in most cases it will be filled out by institutional staff reporting the incidents.

    2.    A separate case number will be generated for each missing person even if all persons reported as runaways or escapees are from the same family or institution.

3.   The completion of as many blocks as possible will assist investigators should the missing person be found deceased as the information contained in this report may be the only information available to identify the person.

(6)   **Additional procedures**
Missing person complaints will be diligently pursued from initiation to location of the person. Always consider obtaining dental charts and medical records.

(a)   If a person is not located for 30 days, the district CI section shall assume full responsibility for the investigation.

1.   When all logical locating methods have been pursued, the case shall be administratively classified as a Missing Person - Fugitive File.

2.   Case reassignment will be done only after 30 days and only after the investigator has made diligent efforts to locate the person.

3.   The CI section will pursue the investigation for another 30 days.

(b)   If the case is not resolved at the end of 60 days, the CI investigator will obtain:

1.   Dental charts,

2.   Medical histories,

3.   Available X-rays;

4.   NCIC Missing Person Packet

(c)   A case unsolved more than 60 days will become a "Missing Person - Fugitive File" investigation and managed similar to a criminal case.

f.   **Stolen Vehicle Report (Form H-108)**

(1)   **Mandated reporting**

(a)   Section 14-151a C.G.S., requires the owner of any motor vehicle which is stolen in this state to report the theft in writing.

(b)   Form H-108 has been adopted by the Department of Motor Vehicle to assist with compliance to this law.

(2)   **Procedure**

(a)   Whenever a trooper investigates the report of a stolen motor vehicle, the investigator shall submit:

1.   A report on Forms DPS-683-C/DPS-302-C;

2.   A DMV Stolen Vehicle Report, Form H-108 as this form is required by law before an insurance company will settle a claim.

(b)   At the time of the initial investigation, the following sections of the H-108 will be completed:

1.   Case number;

2.   NCIC number;

3.   The entire vehicle information section;

4.   The entire owner information section;

5.    The entire officer's report section;

6.    The signature of the complainant.

(c)    Once this information is completed, a copy of Form H-108 is given to the complainant.

(d)    If the vehicle is recovered before the investigator submits Form DPS-683-C, he should complete the entire recovery report (6) and condition on recovery (7) sections of the original H-108.  Then, the original Form H-108 and DPS-683-C reports shall be forwarded together to Reports and Records.

(e)    If recovery has not been made all reports shall be retained locally.

(f)    When the vehicle is recovered, the original reports shall be forwarded to Reports and Records and copies shall be kept in troop files.

g.    <u>Additional Case Activity Form DPS-681-C</u>
This form provides a vehicle for formal communications between troopers and supervisors:

(1)    Assists investigators and supervisors to make case closure decisions.

(2)    Highlights activities pending for investigations assigned to a CI unit or another investigator.

(3)    After reviewing the initial report, the supervisor will determine a need for additional case activity.

(a)    When more investigation is required, the supervisor shall identify the type of activity desired on the Additional Case Activity form.

1.    This may merely require circling one of the coded activities on the upper portion of the form or it may require more specific notes in the "comments" section.

2.    The supervisor will then note the return date at the upper right hand corner of the form.

(b)    The supervisor will retain a copy of the form in his or her files and return the original form to the investigator.

1.    If additional activity is to be performed by the CI unit or original trooper, the original report will be provided to the appropriate supervisor for assignment.

2.    In all cases where an investigator is required to perform additional case activity, the form is submitted to a supervisor along with the appropriate report.

(c)    When case activity is non-productive, the Additional Case Activity form will stand alone as a supplemental or closing report.

(d)    In some cases an investigator will be unable to complete all activity believed necessary during the initial investigation.

1.    In these instances the investigator will identify those activities on this form and submit it to his supervisor along with the initial report.

2.    The supervisor will process the form and make the necessary assignments to complete additional activity.

(e)    Supervisors will be able to monitor investigations and case load by checking their file at the beginning of each tour of duty.

(f)    When an investigation is closed, Additional Case Activity forms shall be removed from the supervisor's file and placed in the case file.

h.    **Form DPS-323-C (RRES)**
It has long been the policy of the Department of Public Safety that all persons shall receive fair and equal treatment regardless of race, sex, national origin or cultural or religious background.

(1)    Section 29-7m., C.G.S. requires the department to monitor, record and classify all crimes committed in the state which are motivated by bigotry or bias.

(2)    All crimes motivated by racial or ethnic considerations, religious beliefs or sexual orientation, which occur within the jurisdiction of the department shall generate a prompt, thorough, professional investigation, using all of the resources of this agency.

(3)    **Impact of bias crimes**
Crimes motivated by bigotry and bias often generate great fear, concern and anger among the general public, as well as among its victims.  Because the possibilities of recurrence, escalation or retaliation exist to a high degree, it is especially important that such crimes are resolved quickly and that accurate information is quickly disseminated to persons directly concerned with the incident, as well as to the general public.

(4)    In cases where there exists speculation or suspicion that a crime resulted from bias or bigotry, a determination that such suspicions are unfounded will tend to quickly dissipate public concerns.

(5)    Prompt investigation, arrest and prosecution of these crimes will assure all citizens that the department will treat such matters seriously and professionally.  Proper response to RRES crimes will alleviate public concerns and minimize the likelihood of recurrence, escalation or retaliation.

(6)    Therefore, whenever a trooper or investigator has probable cause to believe that the motivation for a crime was based on bigotry or bias in the areas of race, religion, ethnicity or sexual orientation, such crimes will be reported as RRES Crimes and Form DPS-323-C shall be completed and submitted.  The form can be used to report supplementary information to an original report.

(7)    Form DPS-323-C shall be reviewed for accuracy and completeness by the supervisor of the submitting trooper and shall be distributed consistent with 20.3.3 b. (10).

(8)    Crimes Analysis shall publish an annual RRES Report, which shall be derived from RRES reports submitted from law enforcement agencies, statewide.

(9)    An RRES caption guide is found in the forms manual

i.    **Form DPS-230-C**
This form reports family violence cases and supplements Form DPS-683-C.

j.    **Form DPS-1068-C**
This form is used to report general criminal intelligence to CCIU for dissemination to various law enforcement entities.

12.4    **Additional Reports**

12.4.1    **Reassigned Cases**

    a.    **Reassigning an investigation**

        (1)    A supervisor reassigning an investigation for any reason shall notify the troop data entry operator of the incident number and the new trooper's ID number who is responsible to complete the case.

        (2)    The ID number will be changed on the original dispatch card screen and the single write screen.

        (3)    The original dispatch card will be modified to reflect no time used.

        (4)    A supplemental dispatch card will be entered providing the ID number of the original investigator and the time expended as shown on the original dispatch card.

    b.    **When to reassign a case**

        (1)    Whenever a trooper or TFC is promoted or reassigned to another command, the supervisor shall obtain a list of his open cases using SPRAMIS report SPR 506;

        (2)    When a trooper becomes unavailable because of retirement, resignation or any other reason including temporary limited assignments, suspensions from duty, extended periods of leave, etc.;

        (3)    When in the opinion of a supervisor or commander, it is beneficial for the department to do so.

12.4.2    **Closing Or Reopening Investigations**

    a.    **An investigation may be closed under the following conditions:**

        (1)    At the time of arrest of all accused persons identified on initial or supplementary reports;

        (2)    When prosecution is refused by a State's Attorney;

        (3)    Arrest of an accused is not possible; or

        (4)    The case is still unsolved after exhausting all investigative leads.

    b.    **Suspending cases**
Whenever a case is suspended, the supervisor approving case closure should consider the following:

        (1)    **Were all logical leads developed and followed up ?**

        (2)    **Was all evidence properly identified and processed ?**

        (3)    **Is anything else pending in this matter ?**

        (4)    **Has the victim been contacted and advised of the case change of status ?**

    c.    **Notice to victim/complainant of case status changes**

        (1)    Whenever the status of a case is changed, the investigator shall personally notify the victim of the change within five days preferably by personal contact.

        (2)    Notice by telephone or mail should discouraged.

**d.**   <u>Reopening an investigation</u>
Whenever a previously closed case is reopened:

(1)   Place an "X" in Box #5 of Form DPS-683-C.

(2)   Enter new information in the remaining boxes on Forms DPS-683-C and DPS-302-C, as required.

**12.4.3**   <u>Prosecutor Reports</u>

**a.**   <u>Satisfy the need for timely information</u>
A prosecutor must have sufficient information to substantiate proffered charges and, in most cases, the prosecutor will not have sufficient time to discuss the case with an investigator prior to a court appearance.

(1)   An arresting trooper must convey sufficient information to a prosecutor concerning any arrest made by means of:

(a)   Using report form DPS-683-C and checking Box #3 to indicate that a "Prosecutor's Report has been sent."

(b)   The trooper shall attach a copy of the Form DPS-683-C and any supplements to a Uniform Arrest Report (UAR) or Uniform Summons Complaint (USC).

(2)   The information provided in the report should sufficiently summarize the facts which would enable a State's Attorney to prosecute the case.

CALEA 13.1.4   **b.**   <u>Reports required for arraignment</u>

(1)   During any arraignment, the court requires the initial investigative report which documents probable cause to be notarized and submitted in time for presentment.

(2)   Notarizing a report requires the trooper to swear to the truth of the report in the presence of a sergeant, superior officer or other notary, who affixes his or her signature to the report below the statement, "Subscribed and sworn to before me this __ day of _____ 19 ."

**12.4.4**   <u>Commitment Of Mentally Ill Persons</u>
Complete details concerning procedures necessary to commit mentally ill persons can be found in Section 19.3.14 and will not be restated here.

**a.**   <u>Form MHCC-1:</u>

(1)   Whenever a person who, in the opinion of a trooper, is of such a mental state so as to present a clear and present danger to himself or others or who is so gravely disabled that he is in need of immediate care or treatment, the trooper shall take or cause such person to be taken to the nearest general hospital for an emergency examination (Section 17a-503 C.G.S.)

(2)   Form MHCC-1 shall be completed, relating the circumstances under which the person was taken into custody and shall be used by a physician as part of an evaluation to provide a basis for the examination.

(a)   A copy of the form will be retained for department files

(b)   Form DPS-683-C must be completed to insure that necessary information is entered into SPRAMIS.

(c)   It is not necessary to send a report copy to the probate court.