# State of Connecticut

# Department of Public Safety



# ADMINISTRATION & OPERATIONS MANUAL

# 4th Edition -- May 1998



**State of Connecticut**
## Department of Public Safety



# GENERAL ORDER

**Number:**   98 -- 02

**Dated:**   May 1, 1998

**Purpose:**   The purpose of this general order is to update department written policy effective with the issuance of the 4th Edition A&O Manual:

By Order of,

John A. Connelly
Commissioner of Public Safety

**Distribute 1 Copy to**
Read & Sign Book
General Order Book

Date of Posting at
local command:

# CONNECTICUT STATE POLICE

# ADMINISTRATION & OPERATIONS MANUAL

**Authority and Purpose**
Pursuant to the authority invested in the Commissioner of Public Safety for the State of Connecticut by Sections 4-8 and 29-2 of the Connecticut General Statutes, all guidelines, directives and orders in this manual and such additions, amendments or revocations as may be required are prescribed to govern the activities of the Department of Public Safety and its components. The contents of this manual provide for the efficient operation of the Department of Public Safety and prescribes rules and regulations intended to ensure the delivery of appropriate public services by department personnel.

**Restricted Information**
Certain sensitive and confidential information concerned with the conduct of emergency response operations and similar matters are located on appropriately marked pages of this manual and are not intended for public dissemination and are restricted to official use only. No restricted portion of this manual shall be distributed outside the department without specific and prior written permission of the Commissioner of Public Safety or a deputy commissioner.

**Cancellation of Prior Directives and Date of Effect**
Prior department rules, regulations, orders and directives that conflict with this manual, are canceled upon publication and distribution of this manual edition. Command special orders shall remain in effect unless rescinded or countermanded by manual directive or general order.

**Applicability of Directives and Effect of Noncompliance**
Violation of any manual rule, general order or special order or directive issued by a department commander or any lawful order of a superior officer, manager or supervisor constitutes grounds for disciplinary action. Troopers and other employees of the department are subject to all applicable manual directives, state laws and regulations. All orders and directives derived from this manual are effective until canceled or amended.

Signed at Middletown, Connecticut and this _____ day of May, 1998

John A. Connelly
Commissioner of Public Safety

# CONNECTICUT DEPARTMENT OF PUBLIC SAFETY

## Administration & Operations Manual

### Fourth Edition

## **Table of Contents**

Department Mission Statement
Code of Honor
Index

| Chapter | Title |
|---|---|
| 1 | The A&O Manual System and Administrative Communications |
| 2 | Organization of the Department |
| 3 | Mission Statement, Command Goals and Objectives, Long Range Planning |
| 4 | Personnel Administration |
| 5 | Misconduct Investigations and Disciplinary Procedures |
| 6 | Records Management |
| 7 | Equipment and Facilities |
| 8 | Related Administrative Procedures |
| 9 | Communications |
| 10 | (Reserved for future use) |
| 11 | (Reserved for future use) |
| 12 | Field Reporting System |
| 13 | Care and Use of Department Equipment |
| 14 | Personal Appearance - Conduct and Discipline |
| 15 | Introduction to Patrol |
| | Patrol Data Card |
| 16 | Motor Vehicle Enforcement Procedures |
| 17 | Motor Vehicle Accident Investigations |
| 18 | Criminal Investigations |
| 19 | Criminal Procedures |
| 20 | Emergency Operations Planning |
| 21 | Handling and Disposition of Property |
| 22 | Special Operations and Activities |

# CHAPTER 12

# FIELD REPORTING SYSTEM

**12.1**      <u>General Information</u>

**12.1.1**      <u>Field Reporting System Purposes</u>

    **a.**      <u>Document official actions</u>
    The department field reporting system documents both the official actions taken and the results of those actions taken in response to reports of crimes and other incidents occurring within areas of primary jurisdiction of the department.

    **b.**      <u>Guide investigative efforts</u>
    The reporting system provides a framework to evaluate and direct the investigative tasks which comprise a comprehensive investigation.

    **c.**      <u>Provide a written basis for criminal prosecution or litigation</u>
    Documentation allows prosecution of criminal events and retention of information related to any reported incident with a potential for criminal or civil litigation.

    **d.**      <u>Provide a method to evaluate investigative performance</u>
    The reporting system provides a means to evaluate the work performance of investigators focused on the completion of assigned tasks.

**12.1.2**      <u>Introduction To Field Reporting</u>

    **a.**      <u>Investigative results should be maximized</u>

        (1)      Some investigators fail to maximize the results of investigative efforts because of inadequate or incomplete reporting.

        (2)      Investigators often believe that if they are alert, tenacious and successful in developing information which leads to an arrest, then they have done all that is required.

    **b.**      <u>What is a good investigative report ?</u>
    A good report is:

        (1)      A word picture of investigative activities and facts developed as a result of investigative efforts;

        (2)      A method informing a supervisor of an investigator's work product;

        (3)      A means to assist an investigator to determine which aspects of an investigation require further development;

        (4)      A permanent record of an investigation that can be used as a basis for successful prosecution;

        (5)      A means to establish a good work "reputation" for the trooper.

12.1.3    <u>Elements of Good Reporting</u>

    a.    <u>A good report answers six basic questions</u>

        (1)    **Who**

            (a)    Who is the complainant?

            (b)    Who reported the incident?

            (c)    Who is the victim?

            (d)    Who are the witnesses?

            (e)    Who is the accused?

            (f)    Who is the suspect?

        (2)    **What**

            (a)    What happened?

            (b)    What evidence was left at the scene?

            (c)    What property was stolen?

            (d)    What method was used to effect the crime?

        (3)    **When**

            (a)    When did the crime occur?

            (b)    When was the complaint made?

            (c)    When were the victims and witnesses questioned?

            (d)    When were the accused taken into custody?

        (4)    **Where**

            (a)    Where was the crime committed?

            (b)    Where was the victim?

            (c)    Where were the witnesses when they made their observations?

            (d)    Where was stolen property disposed of?

            (e)    Where were instruments used in the crime located?

            (f)    Where were any suspects located?

        (5)    **How**

            (a)    How was the crime committed?

            (b)    How was entrance gained?

            (c)    How were the instruments of a crime used?

        (a)     The "why" is not always apparent, but should be developed as the investigation proceeds.

        (b)     In some cases, the "why" may be self evident or it may be inferred during the course of the investigation.

**b.**    <u>Unless these questions are fully answered, it is often difficult to make a final case disposition.</u>

**c.**    <u>Other qualities of good investigative reports</u>

    (1)    **A good report is accurate**

        (a)     It should document what actually happened;

        (b)     Include all essential facts;

        (c)     Matters of speculation should be properly identified.

    (2)    **A good report is brief**
A report can be brief, but it must contain all the essential facts.  The names and addresses of all persons interviewed are included, indicating what information is gained, and where no knowledge of the case is claimed, it should be so stated.

        (a)     All facts bearing on the case should be reported whether that strengthens or weakens the case.  All facts assembled as part of an unbiased report.

        (b)     A good report enables a prosecutor to evaluate the case, properly prepare for case presentation in court and when opportunities arise to discuss the case intelligently with opposing counsel, often leads to a plea of guilty.  Nothing is more troublesome to a prosecutor than an inaccurate or poorly prepared report.

**d.**    <u>Traffic accident reports</u>
While the foregoing qualities are especially important for criminal case reports, it holds true for accident investigation reports.

    (1)    **Traffic accident reports are valuable**
Many troopers have expressed the opinion that these reports are prepared for the benefit of insurance companies.

        (a)     Good reporting protects the rights of injured persons.

            1.    It should be realized that good reporting assures an aggrieved party of a chance to obtain a fair settlement.

            2.    It is just as important that the rights of injured parties are protected as are the rights of a crime victim.

        (b)     Good reports encourage quick and fair settlements

            1.    A large proportion of accident cases are settled based upon the information contained in a good investigative report.

            2.    If reporting is incomplete or inadequate, a case is likely to go to trial, with loss of time for the trooper and, in some cases, embarrassment when questions asked in court cannot be answered because of poor investigative reporting.

            3.    In some instances insurance companies will hold a policy holder, even one who is not found to be at fault, liable for deductible payments specified unless the person at fault is issued a summons.

    (2)    **Good reports provide accurate recollection of facts**

(a)    No one is expected to remember all the facts of a case for an indefinite period of time.

(b)    A well written and complete investigative report refreshes your recollection at the time of trial.

**12.1.4**
CALEA 82.1.5
[CH#100

## Incident Reporting System Audit

a.    **Annual audit and evaluation is required**
At least once each year, the Commander of the Office of Administrative Services shall cause an annual audit and written evaluation of all phases of the department complaint control recording and field reporting systems.

b.    **Duties and responsibilities**
The following commands will routinely assist with this process as necessary and additional commands may be included as required:

(1)    **Selections and Training**
This bureau commander shall cause a review of all pertinent sections of the A&O manual and training procedures in regard to the reporting and recording of incidents to detect discrepancies and any need for changes to any rule or procedure which affects the integrity of the incident reporting system.

(2)    **Reports & Records**
The Reports & Records supervisor shall annually review all procedures which impact the function of that command in regard to the processing of criminal investigation and traffic accident reports.

(3)    **Information Management & Telecommunications**
This bureau commander shall annually review all procedures which impact the function of that command in regard to the processing of incident complaints and investigation reports.

c.    **Source materials**
The following source materials may be used to perform the required reviews and evaluations:

(1)    The department A&O Manual;

(2)    Pertinent SPRAMIS program reports;

(3)    Department Management Information System (MIS) reports;

(4)    Internal command directives and orders;

(5)    Other appropriate sources.

d.    **A report shall be forwarded to Professional Standards**
The Office of Administrative Services commander shall direct a report to Professional Standards reporting the results of the annual audit and review and shall detail any corrective actions undertaken or contemplated.

**12.2**        Dispatch Cards

**12.2.1**      Dispatch Card System Purposes
CALEA 43.1.1
CALEA 81.2.6e  **a.**    Form a data base
                        Dispatch cards provide a comprehensive data base for information developed for tactical and
                        administrative purposes.

                **b.**    Record the performance of police services
                        Dispatch cards provide comprehensive and accurate records of all services performed by
                        department employees and shall be used to record the following information in regard to requests
                        for criminal and noncriminal service or self-initiated activity, to include:

CALEA 81.2.4a           (1)      Control number or case number;

CALEA 81.2.4b           (2)      Date & time of request;

CALEA 81.2.4c           (3)      Name and address of complainant, if possible;

CALEA 81.2.4d           (4)      Type of incident reported;

CALEA 81.2.4e           (5)      Location of incident reported;

CALEA 81.2.4f           (6)      Identification of troopers assigned as primary and backup units;

CALEA 81.2.4g           (7)      Time of dispatch;

CALEA 81.2.4h           (8)      Time of trooper's arrival;

CALEA 81.2.4i           (9)      Time trooper returned to service; and

CALEA 81.2.4j           (10)     Disposition or status of reported incident.

                **c.**    Provide a measure of safety for troopers in the field
                        Dispatch cards allows desk officers and supervisors to monitor the activities of troopers in the field,
                        to provide a higher level of safety for troopers making traffic stops or field contacts.

                **d.**    Documents the reporting of the following incidents in the department service area:

CALEA 82.2.2a           (1)      Citizen reports of crimes;

CALEA 82.2.2b           (2)      Citizen complaints;

CALEA 82.2.2c           (3)      Incidents resulting in an employee being dispatched or assigned;

CALEA 82.2.2d           (4)      Criminal and noncriminal cases initiated by law enforcement employees; and

CALEA 82.2.2e           (5)      Incidents involving arrests, citations, or summonses.

**12.2.2**      Dispatch Procedures
CALEA 81.2.6e
CALEA 81.2.14  **a.**    Processing telephone inquiries

                        (1)      The telephone should initially be answered by a dispatcher whenever possible.

                        (2)      Whenever a request is made for police services, except for a routine traffic accident or
                                similar incident, that call should be transferred to a desk officer.

                        (3)      The desk officer should evaluate the nature of the incident and determine an appropriate
                                response.

        (4)    Information will be recorded on a dispatch card, Form DPS-680-C, including the time the report was received.

CALEA 81.2.5e  **b.**  **Dispatching troopers**

        (1)    After determining that a direct police response is required, the desk officer will dispatch a patrol unit and as many backup units as necessary.

        (2)    Whenever additional units are assigned to an incident, the desk officer will record their ID #s on a supplementary incident card, DPS-684-C.

CALEA 81.2.14       (3)    In some instances no trooper will be requested to respond because the caller only desires a police record of the reporting of the incident to be made to satisfy insurance requirements.

        (4)    When a record only is requested, especially in regard to property loss or damage, dispatchers and desk officers should evaluate any potential for fraud and, if fraud seems likely, a trooper should be dispatched to investigate the incident.

      **c.**  **Self Initiated Activity**
A trooper shall report all self initiated activities, particularly any motor vehicle stop, as soon as possible.

        (1)    The trooper will report pertinent information to include:

               (a)    Arrival at a scene or point of contact; and

               (b)    Time of completion of the activity or assignment.

        (2)    All vehicles stopped, abandoned, unattended or disabled will be called in before the trooper exits his patrol vehicle.

        (3)    A reasonable exception to this would occur if radio traffic is heavy and an unreasonable length of time would lapse between the stop and the approach to the vehicle.

        (4)    Whenever a trooper initiates supplemental investigative activities concerned with a previously reported incident, the trooper will request a supplemental card and provide the original incident number.

**12.2.3**    **Using Dispatch Cards**

      **a.**  **Incident numbering**

        (1)    The incident number or case number is either preprinted or hand written on each dispatch card along its upper right hand edge.

CALEA 82.2.3        (a)    New incident cards are prenumbered to use in sequence with a unique case number assigned to each incident.

               (b)    If an error is made on a prenumbered card, discard it and write the correct incident number on a blank dispatch card.

CH#101       (2)    **UCR coding an attempted homicide**
UCR code an attempted murder as highest level offense incorporated in the act of a rape (02), robbery (03) or an aggravated assault (04) because any murder (01) requires a deceased victim to be valid.

⌈CH#102      (3)     Rearrest and Failure to Appear arrest warrants

                 (a)     **Rearrest warrants**
If the original case number was a Type 1 incident number, use it to record warrant service activities.  If the original charge was not a Type 1 incident, a Type 1 number must be obtained to create a case report file.

                 [b]     **Failure To Appear arrest warrants**
A Failure to Appear arrest warrant will be assigned its own Type 1 number, using the date and time of the failure to appear and the location of the court.  The crime of Failure to Appear is distinct from the original charge by date, time, location and penalty and shall be reported as a separate offense.

         (4)     See A&O Sec. 17.1.4b. (4) (c) for handling traffic accident search and arrest warrants and fugitive cases.

⌈CH#103    **b.**    **Master Incident numbers**

         (1)     A Master Incident number can be used whenever assisting another department troop or unit by writing in the original case number as used by that command, which initially identified the activity.

                 (a)     For example, Troop K uses an incident number for a political rally in Windham and a trooper at Troop W is assigned to check a flight arrival time at Bradley Airport.

                 (b)     Troop W would issue an incident card to record this activity and the Troop K incident number would be written in the Master Incident block.

         (2)     A Master Incident number can interconnect related activities or investigations.

                 (a)     A disturbance at CCI-Osborn generates a Master Incident number.

                 (b)     Each criminal incident occurring during a disturbance can be interrelated by writing a Master Incident number on all incident cards originating from the event, i.e., escapes, assaults, property destruction, criminal conspiracies, etc.

                 (c)     Similarly, related crimes and incidents may be captured using a "master case" number with each crime generating its own incident card and by using one case number written in this block as the Master Incident number.  This is useful to manage chop shop, auto theft and similar investigations or to connect traffic accidents to AMVs, disabled vehicles, highway defects, vandalism, etc.

   **c.**    **Retention of dispatch cards**
Dispatch cards shall be retained for one full year after the conclusion of the calendar year in which they were initiated.

**12.2.4**     **Miscellaneous Service Codes**

   **a.**    **MSR code lists**
⌈CH#104     Updated MSR code lists for Type 4 incidents are periodically distributed by Crimes Analysis and retained at each dispatch center for reference.

CALEA 74.1.1    **b.**    **Legal Process information shall be recorded**
CALEA 74.1.2     Additional information will be recorded on the reverse of an MSR card punched to log service attempt information for writs, subpoenas, warrants and other legal process directed to the department.

         (1)     Date and time received;

         (2)     Type of legal process (civil or criminal);

    (3)      Source and nature of document;

    (4)      Court docket number;

    (5)      Date service is due;

    (6)      Fee, if any, accompanying the process paper;

    (7)      Name of plaintiff/complainant or defendant/respondent;

    (8)      Trooper of record assigned for service;

    (9)      Date and time of assignment for service;

    (10)     Date, time and location service is made and to whom;

    (11)     Explanation of any failure to serve process.

**12.2.5**      **Supplementary Dispatch Cards**

    a.      **Purpose**
             The purposes for a supplementary dispatch card is to:

         (1)      Provide data of assistance to troopers by troopers;

         (2)      Determine time expended on other assistance and back-up calls; and

         (3)      Determine time expended on investigations.

    b.      **Procedure**

         (1)      Once assistance is necessary and back-up is required, the desk officer shall assign a trooper close to the incident to respond and record all information on a supplementary incident card.

         (2)      Any perceived threat to a trooper will be the primary factor to determine the need for back-up troopers.

         (3)      Troopers assisting on their own initiative shall notify the desk officer to punch a supplementary card.

         (4)      The desk officer shall be advised whenever a trooper does investigation follow-up work so that a supplementary card for the trooper will record the time expended under the original case number.

    c.      **Retention of supplementary dispatch cards**
             Supplementary cards shall be retained for 1 year in addition to the calendar year in which the initial supplementary card was punched.

    d.      **Entering other data on incident cards**
             Check for other entry information on dispatch and backup or supplementary cards in the forms manual.

**12.3**          Field Reporting

CALEA 43.1.1

**12.3.1**        Purpose Of Field Reporting
It is important that every investigation or serious incident is properly reported.  Field investigation reports serve as an official record of all department activities and ensures that critical information is available to any department investigators assigned to continue or follow-up on an investigation.

CALEA 42.1.3c   a.   Reporting requirements
CALEA 82.2.1a        Written reports are required to document the following:

(1)    Crimes as defined by the Penal Code (Title 53a);

(2)    Traffic accidents (A&O Sec. 17.1, 17.2);

(3)    Violations of other state statutes, including status offenses;

(4)    Violations of town ordinances

(5)    Motor vehicle incidents initiated by a complaint;

(6)    Untimely deaths;

(7)    Accidents which result in serious physical injury or serious property damage other than those caused by a motor vehicle;

(8)    All runaways or missing persons;

(9)    All lost or found property which comes into possession of a department employee; and

CALEA 43.1.1a   (10)   Any other incident or complaint which in the opinion of a commanding officer or shift supervisor which requires an investigation including vice, drug and organized crime complaints.

CALEA 42.1.3a   b.   Submit initial reports promptly
CALEA 82.2.1e

(1)    Investigative reports should be submitted without delay.

(a)    An initial investigation report shall be submitted to the duty supervisor at the end of the tour of duty on the day when the investigation originated.

(b)    If same-day submission is not feasible, except when a defendant is to be immediately arraigned in court, the initial report shall be submitted by the end of the next scheduled work day.

(c)    Lengthy and complex investigations may prevent submitting reports on a daily basis, but not more than five days of investigative activities should be reported on a single report without concurrence from the supervisor.

c.   Report legibility is a critical element of field reporting
Legibility is a key element of the reporting system and troopers who experience problems writing reports should hand-print or type the report.

(1)    Illegible reports shall be returned for resubmission;

(2)    Reports may be completed with black ball point pen or typewritten.  When reports are hand written, press down hard so that the last copy of the report is legible;

(3)    Reports will be reviewed by a supervisor prior to submission for data entry and processing so that any corrections can be made.

CALEA 42.1.3a  **d.**    **Submit required supplemental reports**

(1)    Supplemental reports shall be submitted at the discretion of the investigator or as required by the reviewing supervisor and shall normally be logged on an additional case activity report form.

(2)    **Open cases shall be updated every 30 days**

(a)    A supplementary report shall be submitted at least once every 30 days for each open or unsolved case assigned to an investigator.

(b)    Supplemental reports ensure that open cases receive consistent investigative and supervisory attention until closed or completed.

CALEA 82.2.5  **e.**    **Submit completed investigation reports to Reports and Records**

(1)    **Active investigation reports shall be retained locally**

(a)    Local commands shall retain all copies of criminal and traffic accident investigation reports until the case is closed.

(b)    Following closure, original reports and original supporting documents shall be forwarded to Reports and Records.

(c)    Seized property invoices, original and any copies showing chain of custody and disposition, shall be retained until the court orders disposition and then forwarded to Reports And Records.

CALEA 42.1.3d  (2)    **Duplicate report files shall be maintained.**

(a)    Local commands shall retain and file two sets of investigation reports with supporting documents, divided into an original report file and a unit copy or duplicate file.

(b)    Original report files shall be secured so as to restrict access to the files to necessary command clerical personnel only.

(c)    Commanders shall ensure the security and integrity of all retained original case files.

(3)    **Certain reports may be forwarded immediately.**
Investigative reports, closed upon writing of the initial report, may be immediately forwarded to Reports and Records with the unit copy retained at the local command.

(4)    **Traffic accident reports**
Local commands shall forward traffic accident report form copies to Report And Records, such as: Form PR-1, Police Accident Report; Form PR-2, Fatal Accident Supplement; and Form A-44 (DWI) and all related original supplemental reports on Form DPS-302-C (C-1) to Reports and Records upon case closure.

CALEA 82.2.5  **f.**    **Forward traffic accident and DWI arrest report originals**

(1)    Investigators shall forward the original Form A-44 and Forms PR-1, PR-2 to DMV.

(2)    Copies of Form A-44 and other pertinent traffic accident reports shall be directed to DOT (See 17.1.5).

CALEA 43.1.2  **g.**    **Vice, drugs, organized crime and sensitive investigation reports**
CALEA 82.2.5    Commands which conduct sensitive active investigations dealing with vice, drug and organized crime activities shall keep their investigative reports securely filed and independent from the central records system.  (See also A&O Sec. 6.2.2 a.)

**12.3.2**
CALEA 82.2.1b
⌈CH#105-107

**Investigation Report Forms**

a.   **The field reporting system uses the following forms:**

    (1)   Form DPS-683-C, Investigation Report;

    (2)   Form DPS-302-C and DPS-302-C-1, Continuation of Investigation Report;

    (3)   Form DPS-159-C, Initial Missing Persons Report;

    (4)   Form DPS-241-C, Contact Report;

    (5)   Form DPS-230-C, Family Violence Report;

    (6)   Form DPS-323-C, Race, Religion, Ethnicity, Sexual Orientation Report (RRES).

    (7)   Form DPS-1068-C, Field Intelligence Report (FIR)

⌊
CALEA 82.2.5
⌈CH#108

b.   **Forwarding investigative reports**

    (1)   **General report forms**
Distribution of Forms DPS-683-C, DPS-302-C (C-1):

      (a)   These reports shall be duplicated as needed.

         1.   The original report copy is forwarded to Reports and Records after case closure;

         2.   A photocopy is retained within troop or unit files and;

         3.   A second photocopy is retained by the investigator while the case is open and then may be disposed of after case closure.

      (b)   **Retaining report copies**

         1.   If an investigation is opened and closed with the writing of the initial report, one photocopy will be retained in local files.

         2.   If a case is active, investigators will retain a reference copy.

    (2)   **Closing cases assigned to other investigators**
The closing investigator will obtain copy reports from case files and notify the initial investigator that the case is closed.

CALEA 82.2.5

    (3)   **Routing reports**

      (a)   **Form DPS-159-C, Missing Persons Report**
Form DPS-159-C will be forwarded the same as Form DPS-683-C

      (b)   **Form DPS-241-C, Contact Report**
Direct the original copy to the data entry clerk for processing to retain in local incident files.

      (c)   **Form DPS-230-C, Family Violence Report**
Retain this form as follows:

         1.   Original report will be sent to Reports and Records with the original completed case report (Form DPS-683-C);

         2.   Direct a photocopy to court when an arrest is made;

         3.   Place a photocopy in troop files.