UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEAL E. WAANANEN<br>*Plaintiff* | :    CIVIL ACTION NO.<br>:<br>: |
| V. | :    3:02CV2307 (JBA) |
| TIMOTHY BARRY, EDWARD LYNCH,<br>JOHN REARICK and SUE KUMRO<br>*Defendants* | :<br>:<br>:    NOVEMBER 17, 2003 |

### PLAINTIFF'S RESPONSES TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION

Pursuant to the provisions of Rules 33 and 34 of the Federal Rules of Civil Procedure, the defendants, Timothy Barry, Edward Lynch, John Rearick and Sue Kumro, hereby request the plaintiff, Neal E. Waananen, respond to the following interrogatories within thirty (30) days of the certification of the mailing hereof, and to produce for inspection and/or copying such documents as may be hereinafter requested.

### INTERROGATORIES:

1. Identify the person(s) answering these interrogatories. Include, full name, home address, work address, date of birth and social security number. See Instructions and Definitions, paragraph #7.

### ANSWER:

**Neal E. Waananen,**
**home address: 108 Griffin Rd. South Windsor, CT,**
**work address: 1111 Country Club Rd. Middletown, CT,**
**DOB: 07/20/59,**
**SS #: 031-52- 4001.**

2. In paragraph 8 of the Complaint, it states, "In violation of the rules and norms of the Employee Assistance Program, and with no legitimate basis for doing so, defendant Kumro promptly contacted the defendant Lynch without first having made any attempt to communicate with the plaintiff and enlisted defendant Lynch in a joint action to violate the constitutional rights of the plaintiff hereinafter set forth. Defendant Lynch thereafter enlisted defendants Rearick and Barry in the said unlawful conspiracy."

(a) Please state upon what facts you allege that Ms. Kumro was in violation of the "rules and norms of the Employee Assistance Program." Be specific with your response.

(b) Please state upon what facts you base your allegation that the defendants conspired against the plaintiff. Be specific with your response.

**ANSWER:**

**The Connecticut State Police (CSP) Employee Assistance Program (EAP) is allegedly a "confidential counseling and support service for employees who have problems, including marital problems, which adversely: affect their lives, families, or job performance". EAP referrals can be made by an "employee (self) or a supervisor", not a subordinate and ex-friend, Trooper James Tilley, who had a score to settle. The EAP coordinator, Master Sergeant Susan Kumro, who was a close personal friend of Trooper Tilley, was supposed to be an "advocate for me, the involved Trooper". However, Master Sergeant Kumro shirked her responsibilities and simply passed on unsubstantiated third hand information to Major Lynch, while they were working together on the funeral preparations for Middletown Police Officer Dingwall, who had been killed in the line of duty. Major Edward Lynch, a former commander of the Tactical Teams (commonly known as SWAT), notified Lt. Colonel Timothy Barry and together deemed this required a Tactical Team response. Major John Rearick was notified and responded to my residence because he was my district (eastern) commander at that time.**

3. In paragraph 9 of the Complaint, it states that "the defendants thereupon mobilized a force of dozens of state police officers and Enfield police officers and surrounded the plaintiffs house at 3 Pilgrim Circle kn Enfield, Connecticut. They caused officers to enter the plaintiff's home without a warrant and without probable or any exigent circumstances, to seize the person of the plaintiff and to search the plaintiff's person and residence."

(a) Please identify the state police officers and Enfield police officers wilo surrounded plaintiff's home. See Instructions and Definitions, ¶ 7.

(b) Please identify the name(s) of the officers who "seize[d] the person of the plaintiff." See Instructions and Definitions, ¶ 7.

(c) Please identify upon what facts you base your allegation that the officers searched the plaintiffs residence. See Instructions and Definitions, ¶¶ 8 and 9.

**ANSWER:**

**(a) The State Police I personally recall seeing were Lieutenant Colonel Barry, Majors**

Rearick and Richard Wheeler, Lieutenants Thomas Davoren and Eric Smith, and Sergeant William Konieczny. Numerous others were present and visible but I don't have specific recall who, nor did I speak with any of them. Countless others have since told me they were at my residence that night. The Enfield Police that I recall being present were Sergeant Barry Berger (a neighbor) and I believe Chief Marcotte. Many other Enfield Police officers were present including members of their command staff, who wear white uniform shirts making them stand out.

(b)     Lieutenants Davoren and Smith entered my residence and interviewed me. After I had satisfactorily answered their questions they told me I had to go outside and speak with the "Colonel" (Barry). They checked me for weapons and led me outside out onto the neighborhood street. There, Lt. Col. Barry again asked me the same questions, which I again satisfactorily answered. Lt. Col. Barry at that time ordered me to be psychologically examined at the Institute for Living hospital, against my protest. Lt. Smith patted me down again and a uniformed Lt. Davoren took possession of me and drove me to the hospital in his State Police cruiser.

(c)     While en route to the hospital, Lt. Davoren received a cell phone call from an unknown party at the scene (my residence) who demanded to know why I hadn't revealed I had a .22 caliber rifle, which had been discovered in my upstairs master bedroom's closet. In addition, the unknown caller demanded to know where my 30/30-caliber rifle was because they had found 30/30-caliber ammunition in the same closet. In addition, my off-duty .380-caliber pistol was seized from my locked State Police cruiser's locked glove compartment in my locked attached garage. Lastly, my unloaded, broken down (apart), locked, department issued pistol was seized from my den's closet.

    4.     Paragraph 10 of the Complaint states that "Defendant Barry thereupon, without any lawful basis, forced the plaintiff to be transported against his will in a police vehicle to the Hartford Hospital and there compelled the plaintiff to be stripped of his clothing and subjected to a psychiatric examination at his own expense and without his consent."

    (a)     Please state upon what facts you base your allegation that plaintiff was "forced" to be transported to Hartford Hospital.

    (b)     Please identify all expenses incurred by the plaintiff as a result of the examination at the hospital as described in paragraph 10. See Instructions and Definitions, ¶ 9.

**ANSWER:**

(a)     Lt. Colonel Barry was visibly upset after questioning me in my neighborhood street because this situation was not what he had been led to believe. To end things quickly

and attempt to resume normalcy he stated I was going to the Institute for Living for a psychological examination. I protested and said I didn't need to go and he ordered me to go. An ambulance was going to be called to transport me but Lt. Davoren volunteered to take me instead.

(b)  My insurance carrier had to pay for this examination at the hospital because the department hadn't filled out an emergency examination (committal) report nor had it volunteered to foot the bill. In addition, I wasn't on the clock and never offered compensation by the department for my time.

     5.  In paragraph 11 of the Complaint, it states, "When the medical personnel at Hartford Hospital ascertained swiftly that there was absolutely nothing wrong with the plaintiff and discharged him, defendants Barry, Rearick and Kumro prohibited the plaintiff from returning to his home and forced him to spend the night at a motel."

     (a)  Please state the amount of time the plaintiff was at the hospital, from first arrival to the time of actual discharge.

     (b)  Please state upon what facts you base your allegation that Barr, Rearick and Kumro "prohibited" plaintiff from returning to his home.

**ANSWER:**

(a)  I believe it was approximately 3 hours.

(b)  In addition to Lt. Davoren being at the hospital, several unidentified Troopers were there upon our arrival to check on the welfare of the Lieutenant and ensure I hadn't hurt or overpowered him during the trip. Master Sergeant Kumro also responded to the hospital. Upon my release, Lt. Davoren informed me that he had been in contact with Major Rearick and that I was required to contact Peter Curley at Public Safety EAP (an outside agency) in the morning and follow his prescribed program because Master Sergeant Kumro is incompetent, a gossip, and can't be trusted. In addition, Lt. Davoren informed me that per the Colonel (Barry) and Major Rearick I wasn't to return to my residence or have any contact with my family. Lt. Davoren asked me to call a family member or friend and I refused to involve anyone in this embarrassing incident. I told him I would stay at a motel. Lt. Davoren drove me to my residence and went inside, while I waited in his cruiser. He returned with my keys, minus my house keys, that he told me he left behind with my wife. In addition, he had a small overnight bag with a few days change of clothes. I drove my State Police cruiser to a motel and Lt. Davoren, in uniform, came in while I registered. He followed me up to my room and reiterated that I wasn't to return or make contact with my family. I had him note my odometer mileage in case my

**wife claimed I returned home.**

6.  In paragraph 11 of the Complaint, it states, "They [Barry, Rearick and Kumro] prohibited the plaintiff from having anything but extremely limited contact with his children or with his wife and required him to undergo psychological treatment for an extended time," indicating what constituted the "extended period of time."

    (a)  Please state upon what facts you base your allegation that Barry, Rearick and Kurmo prohibited the plaintiff from seeing his wife and/or children for an extended period of time.

    (b)  Please state upon what facts you base your allegation that the plaintiff was required to "undergo psychological treatment for an extended time."

    (c)  Please state when the plaintiff returned to duty and how many days of work time were lost as a result of the matters associated with the complaint.

**ANSWER:**

(a)  Lt. Davoren stated I wasn't allowed to return to my residence nor see my family, per the Colonel (Barry) and Major Rearick. Two days later Major Rearick telephoned me at work and stated that there had been a mis-communication and they (the department) only meant I couldn't return to my residence or have contact with my family that initial overnight. The next morning I went to my children's school to see them and encountered my wife. Moments later Master Sergeant Kumro was paging me. I telephoned her and she demanded to know why I was at my children's school and that my wife had called her claiming fear that I might abduct my children. Master Sergeant Kumro then offered to "broker" a deal with my wife to allow me to see my children. She did so with many conditions attached.

(b)  The morning after the incident I met with Peter Curley, of Public Safety EAP, as was directed to by Lt. Davoren. Peter Curley referred me to a therapist, Deborah Hewitt, but she didn't take my insurance so I was then referred to a psychologist, Dr. Colby. I saw Dr. Colby numerous times until on April 19, 2000 at which time, "he saw no need for additional treatment to be mandated at this time". This was relayed via letter to Public Safety EAP who in turn relayed it via letter to Lt. Davoren, my immediate superior. Upon reading this letter, Lt. Davoren called me into his office and gave me the letter stating something to the effect, "You keep this so it doesn't end up in your personnel file".

(c)  I returned to work the next morning and lost no time from work. I was encouraged by Lt. Davoren to take some time off but unless ordered I felt it was extremely important

to be seen working.

7. In paragraph 12 of the complaint, it states, "For a period of time, defendants Barry and Rearick also prohibited the plaintiff from performing his usual duties of his position and from carrying a firearm as required by the job." Please state what "usual duties" that plaintiff was "prohibited" from performing.

**ANSWER:**

**At the motel, Lt. Davoren told me that per the Colonel and Major Rearick I was on administrative duty status. I was not suspended, nor were my police powers taken away, but they had seized my weapons. I was allowed to continue to work and drive my State Police cruiser, however I wasn't allowed to be armed. Therefore, my safety and society, who expect State Police to be armed, were jeopardized. In addition, I worked in plain clothes because all of my uniforms were still in my house that I was prohibited from.**

8. Paragraph 16 of the Complaint states, "The actions of the defendants described above violated the plaintiff's Fourth Amendment right to be free from unreasonable and warrantless searches and seizures of his residence, person and effects."

(a) Please state what "effects" were alleged seized from the plaintiff.

(b) Please state upon what facts you base your allegation that the plaintiff's residence was seized. Be specific with your response.

**ANSWER:**

**(a) My personally owned off-duty .380 caliber pistol and .22 caliber rifle were seized. In addition, my department issued pistol was seized.**

**(b) My residence was searched, not seized; however items (firearms) during this search were illegally seized.**

9. State whether you or any individual named in response to any of these Interrogatories to your knowledge, or to the knowledge of your attorney, has given any statement regarding the subject matter of this case or concerning the actions of any party or witness thereto (except privileged statements made by a party in confidence to his or her attorney) and identify each person having custody or a copy or copies of such statements. See Instructions and Definitions, paragraph # 10.

**ANSWER:**

**I have spoken with numerous persons in the mental health field about this incident. I know of no other person making statements.**

10. Identify each person whom you expect to call as an expert witness at trial concerning the incident(s) alleged in your Complaint, and for each such expert witness provide the subject matter upon which he/she is expected to testify. See Instructions and Definitions, paragraph #7.

## ANSWER:

**Persons in the mental health field whom I have seen and treated me for post traumatic stress disorder and anxiety attacks. My attorney has not specified which of my treaters would be called as an expert at this time.**

11. State whether you, your attorney, or any other representative has any photographs, reports, drawings, charts, diagrams, maps, models or other tangible evidence prepared by parties, witnesses or experts expected to testify in this case concerning any of the events alleged in your Complaint. If so, identify any person(s) who have custody or control of any of the materials referred to above, specifically describing which of the materials each such person possesses.

## ANSWER:

**My attorney has a copy of a police report that Enfield P.D. wrote regarding this incident. In addition, I have a copy of a screen saver photograph that was loaded onto my work computer depicting Tactical Team members in camouflaged uniforms with weapons drawn carrying a pizza, which has been superimposed. In addition, I have an anniversary card of this incident signed by subordinates and my superior from my Troop upon the first anniversary of this incident.**

12. If you have received medical (including psychiatric) treatment (physical, mental or otherwise) for the injuries alleged in your Complaint from any hospital, clinic, physician, psychologist, nurse, social worker or other health care provider, please identify each such hospital, clinic, physician, psychologist, nurse, social worker or other medical practitioner from whom you received such examination or treatment, and state the date(s) upon which such medical treatment(s) was received and state whether the physician and/or health care provider rendered an opinion respecting the nature and extent of the injuries, conditions and/or disabilities claimed by you. See Instructions and Definitions, paragraph #15.

## ANSWER:

On 01/31/00 Hartford Hospital should have a record of an emergency room examination of me. Therapist Deborah Hewitt, of Enfield, saw me in the beginning of February of 2000 until she learned she wasn't in my insurance network at which time I was referred to Dr. Kenneth Colby, of Enfield. I saw Dr. Colby numerous times during February, March, and April of 2000. In April of 2000, Dr. Colby saw no need for additional treatment to be "mandated" at this time. The court assigned doctors Kenneth Robson and Frank Stoll of West Hartford during my divorce and custody proceedings. Dr. Robson diagnosed me as suffering from posttraumatic stress disorder (PTSD) during the summer of 2001. I have seen, off and on, Dr. Wesley Vincent of Enfield to address my anxiety (panic) attacks

13. At any time between 2000 and the present date, did plaintiff tape record or record by any electronic means, any conversation with any person employed by the Department of Public Safety the contents of which might pertain in any way to the allegations contained in this complaint?
**ANSWER:**

No.

14. If you claim that as a result of the incident alleged in your Complaint you were prevented from following your usual occupation, or otherwise lost ftme from work, describe in detail the manner in which you were prevented from following your usual occupation and amount of time lost from work.

**ANSWER:**

I never lost time from work but wasn't allowed to carry a gun or wear my uniform for three days following this incident.

15. State whether you are claiming as an item of damage in this lawsuit loss of future earning capacity. If so, describe in what mariner your future earning capacity has been adversely affected by the incident(s) which are the subject of your Complaint.

**ANSWER:**

I lost future earnings because a promotional examination was held the months following this incident and while I took the exam I did very poorly because my mind was on other matters due to this incident. My career was in jeopardy, my marriage failed, my reputation was destroyed, my good name was soiled, and I was humiliated beyond comprehension. In addition, my failed marriage led to a messy divorce, which required me to have to curtail working overtime in order limit the alimony and child support I ended up having to pay. All of this was because of this incident.

16. With respect to each and every one of the allegations in the complaint, state with specificity all "damages" and/or losses that you claim to have suffered. Please itemize with particularity any and all monetary damages, whether potential or actual, which you claim to have incurred as a result of any of the allegations in your complaint asserted against defendants, and set forth in complete detail the dollar value of each element of claimed damages. Identify any documents relied upon, referred to or related to in your response to this interrogatory.

**ANSWER:**

**Emotional damage - priceless.**

17. State whether you have ever filed a lawsuit, complaint, or grievance of any kind other than the instant lawsuit. If your answer is affirmative, identify the agency with which you filed the lawsuit, grievance or complaint, the date upon which such lawsuit, grievance or complaint was flied, the identity of the person(s) complained of, and the disposition of the matter.

**ANSWER:**

**Yes, I sued a woman in Pennsylvania in 1990 following a motor vehicle accident. This was settled out of court with nominal damages awarded.**

18. Please describe in detail the emotional distress, mental anguish, pain and suffering and humiliation you have suffered as a result of the defendants' actions as alleged in your complaint, including but not limited to all bases for your contention that defendants inflicted emotional distress upon you. Identify any documents relied upon, referred to or related to in your response to this interrogatory.

**ANSWER:**

**The emotional distress, mental anguish, pain and suffering, and humiliation I have suffered and continue to suffer are staggering. My children witnessed me being patted down and led away from our home one night never to return. They were told that Daddy was mentally ill and needed to go away to a hospital. My neighbors, subordinates, superiors, and local police department witnessed me being led out of my house and taken away in a cruiser for an emergency psychological examination. My house was illegally searched and personally-owned items illegally seized without due process. Enfield P.D. generated an erroneous, unflattering, and one-sided police report due to my department's involvement and that is a public record. It has been used against me during my divorce and to convince people to turn against me. I have been subjected to**

embarrassing and expensive psychological evaluations ordered by the courts during a custody battle. My name throughout the department will forever be tied to the "guy who the SWAT team took out of his house."

### REQUESTS FOR PRODUCTION:

The defendant(s) requests the plaintiff to produce, or make available for inspection and copying, the following:

1.  Copies of all medical reports and records, and itemized statements of medical expenses, pertaining to examination and/or treatment of the plaintiff for injuries incurred as a result of the incident(s) alleged in the Complaint, including but not limited to, nurse's notes, charts, treatment summaries, physician's reports, bills or statements for prescription drugs or medicines, physician's services, hospital and/or operating room expenses, appliances, ambulance costs, recovery expenses and any other bills, costs or expenses referred to in answer to any of these interrogatories.

### RESPONSE:

**All records and reports attached hereto.**

2.  A copy of each non-privileged statement identified in response to Interrogatory No. 9 above.

### RESPONSE:

**Enfield Police Report attached hereto.**

3.  A copy of each tape or electronic recording identified in Interrogatory No. 13 above.

### RESPONSE:

**None.**

4.  If lost wages or loss of future earning capacity are claimed as items of damages in this lawsuit, provide copies of the plaintiffs federal and state income tax returns, including all forms and schedules, for the two (2) tax years immediately preceding the tax year in which the alleged injuries were incurred, the tax year in which the alleged injuries were incurred, and the tax year next following that in which the alleged injuries were incurred.

**RESPONSE:**

**My former wife is in possession of all such records and would not give me copies. In their stead I have attached a Tax Record Request form to allow retrieval of all such records.**

     5. Copies of any and all photographs, reports, papers, books, documents, maps, drawings, diagrams, models, electronic recordings or other tangible evidence expected to be used at trial and which were identified in the plaintiffs answer to Interrogatory No. 11 above.

**RESPONSE:**

**Attached.**

     6.    Copies of all reports prepared by expert witnesses as identified in your answer to Interrogatory No.10 above.

**RESPONSE:**

**No specific expert named at present. All doctor reports and records attached hereto.**

     7.    All documents that relate to any treatment, examination or consultation that you received in the past two (2) years for any psychiatric or psychological illness, disorder or condition.
**RESPONSE:**

**Attached.**

     8.    All documents that relate to any alleged loss, damage, suffering, injury, distress or harm you sustained relating to or resulting from any of the events or circumstances alleged in your complaint.

**RESPONSE:**

**Attached.**

     9.    All documents, including e-mails, notes, letters, memos, diaries or other writings kept by plaintiff, that relate or refer to allegations in the complaint.

**RESPONSE:**

**Attached.**

10. All documents identified in answering or used or relied upon by the plaintiff in preparing answers to any of the defendants' interrogatories.

**RESPONSE:**

**Attached.**

11. Please provide any and all documents identified in response to the interrogatories propounded by the defendant which requests are not specifically enumerated above.

**RESPONSE:**

**Attached.**

12. Please provide fully executed medical authorization form (attached) for each treating health care provider identified in your response to Interrogatory No. 12.

**RESPONSE:** **Objection. This request is overly broad and constitutes an invasion of privacy not warranted by the issues in this litigation. I have attached my records and reports hereto.**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEAL E. WAANANEN<br>*Plaintiff,* | : | CIVIL ACTION NO.<br>3:02CV02307(JBA) |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY BARRY,<br>EDWARD LYNCH,<br>JOHN REARICK and<br>SUE KUMRO<br>*Defendants* | :<br><br><br><br>: | <br><br><br><br>September 17, 2003 |

### OATH OF RESPONDENT

I, Neal E. Waananen, being of sound mind and legal age, and having been duly sworn, do hereby depose and say that:

1. I am the respondent identified in interrogatory no. 1 above.

2. The answers and documents provided in response to the attached interrogatories and requests for production are true, accurate and complete to the best of my knowledge and belief, excepting only those to which I have objected, if any.

*[signature]*
Neal E. Waananen

Subscribed and sworn to before me this 7th day of October, 2003.

*[signature]*
My Commission Expires June 30, 2004
~~Commissioner of the Superior Court~~/
Notary Public

19