UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEAL WAANANEN : | CIVIL NO.  3:02CV2307(JBA) |
| *Plaintiff*, : | |
| : | |
| v. : | |
| : | |
| TIMOTHY BARRY, : | |
| EDWARD LYNCH, : | |
| JOHN REARICK and : | |
| SUE KUMRO : | |
| *Defendants*. : | May 10, 2004 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
SUMMARY JUDGMENT**

At the outset, the defendants remind the court that the sum total of the plaintiff's evidence is simply the plaintiff's own self-serving testimony that either is unsubstantiated, irrelevant, speculation or his personal conclusions, rather than FACTS. This is typical Williams & Pattis case, strong on conclusions and weak on admissible evidence.

It is established law that a plaintiff may NOT rely on "mere speculation or conjecture as to then true facts to overcome a motion for summary judgment." Lipton v. The Nature Company, 71 F.3d 464, 469  (2d Cir. 1995).

For instance, the plaintiff states in his facts that " the defendants caused the police to search plaintiff's residence and the seizure of his personally owned off-duty .380 caliber pistol and .22 caliber rifle." (Plaintiff's Facts, ¶ 15).  This statement is flatly

untrue because the plaintiff admits that to his knowledge the ONLY officers who asked him about weapons in his home were Lieutenants Davoren and Smith, NOT the defendants. (Facts ¶¶ 58-62).[1]

Similarly, the plaintiff claims that when he existed his home he encountered a "sea of police officers, both state and local, and *SWAT team members*." (Plaintiff's Facts, ¶ 29). However, the plaintiff admits that the SWAT team never actually came to the plaintiff's home. The SWAT team remained over two blocks away. (Facts ¶ 33, Plaintiff's Rule 56(a)2 Response ¶33).

Included in the plaintiff's facts is the claim that the psychiatrist who examined him said that he didn't need a doctor, he needed a lawyer." (Plaintiff's facts, ¶ 37). Of course, this hearsay statement is uncorroborated. There is no actual testimony by the physician who allegedly made this statement.[2]

More disturbing is the plaintiff's incorrect assumption that because he disagreed with the police response to a report by his then wife and neighbor that they were concerned about her husband's mental state because of his behavior, that alone supports a constitutional violation. The plaintiff's Rule 56(a)2 Statement of Facts does not refute the specific facts set forth by the defendants' witnesses. Instead, the plaintiff simply repeats his allegations in overly general conclusory statements. Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); Jing Ying Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993)(holding that a party may not rely

---

[1] Plaintiff denies Defendants' Facts stating that the defendants did not search his home. See Plaintiff's Rule 56(a) Response ¶¶ 59, 60, 61, 62). But the plaintiff's citation of his interrogatory answers do not support his denial of these facts.

[2] Defendants have moved to strike certain paragraphs in plaintiff's facts, including Plaintiff paragraph 37.

2

on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

### THE PLAINTIFF'S RECITATION TO BOILERPLATE LAW DOES NOT PRESENT SUFFICIENT FACTS TO ESTABLISH THE REQUSITE PERSONAL INVOLVMENT NEEDED TO ESTABLISH LIABILITY UNDER § 1983.

The plaintiff's response to summary judgment does NOT refute that defendants Lynch, Kumro and Rearick did not search the plaintiff's home or make the decision that he undergo a psychological evaluation. Furthermore, the plaintiff's lengthy discussion on supervisor liability misses the point that none of these individuals had supervisory authority over defendant Barry. So the law of supervisor liability is irrelevant in this case as to these defendants. Furthermore, liability under § 1983 may not be premised on a theory of "respondent superior." Ruark v. Solaro, 928 F.2d 947, 950 (10th Cir 1991); Dean v. New York City Transit Authority, 297 F. Supp. 2d 549 (E.D.N.Y. 2004). It is also true that the plaintiff must set forth specific facts to raise a triable issue as to whether each defendant acted with deliberate indifference to his rights. Poe v. Leonard, 282 F.3d 123, 141 (2d Cir. 2002). The daily decisions of every supervisor is not the basis of liability under § 1983 simply because the plaintiff is embarrassed or disagrees with a supervisor's decision.

By his own admission, the plaintiff has no evidence that any of the defendants searched his home or seized his property. His own testimony illustrates this point:

> Q    Now, during, you know, the events that had taken place up to that point, I mean, Lieutenant Colonel Barry never came into your house?
>
> A    While I was there, no sir. Afterwards, I have no idea.

Q       And, of course, I think you've already indicated this, but just to clarify, Major Edward Lynch, he did not come into your house?

A       Once again, I don't know who went into my house, sir. The only two that I know for sure were now Captain Davoren, Lieutenant Davoren at the time, and now Captain Smith then Lieutenant Smith at the time.

Q       And with regards to Major Lynch, now he did not make any decision as far as you having to undergo any kind of mental examination?

A       I don't know what Major Lynch's involvement was in this.

Q       But you don't have any evidence or any knowledge that he was involved in the decision for you to undergo a mental examination?

A       No. I believe it was Colonel Barry.

Q       And Major Rearick, he did not come to your home?

A       Once again, not while I was there.

Q       And to your knowledge he did not search your home?

A       Once again, not while I was there.

Q       And to your knowledge Major Rearick did not make any decision about you having to undergo any kind of mental examination?

A       Once again, I have no idea what their conversations were prior to this.

Q       And with regards to Master Sergeant Sue Kumro, she did not come into your house as far as you know?

A.      I don't know. Once again, not to my knowledge, but not while I was there at least.

Q       Well, with regards to Lieutenant Colonel Barry, I mean as we sit here today, did you have evidence that he entered your house or searched your residence?

A       Do I have any evidence that he did?

4

> Q	Yes.
>
> A.	No. Did his people, yeah.
>
> Q	I'm only asking you about Lieutenant Colonel Barry. With regards to then Major Lynch, do you have any evidence that he himself came into your home and searched your residence?
>
> A	Asked and answered. I told you the only two people that I know that entered my residence of the State Police nature were then Lieutenant Davoren and then Lieutenant Smith. I was then escorted away. I don't know who went in. No one has told me, there is no report, there is no documentation.

(Defendant's Ex. 9, Plaintiff's deposition, pp. 228-229).

Moreover, the plaintiff's assertion that the defendants allowed his rights to be violated misses the critical point that "IF" Colonel Barry indeed ordered the plaintiff to undergo a psychological examination and ordered the search of the plaintiff's house, all of the remaining defendants being of lesser rank, had no authority to countermand Colonel Barry's directive. So the presence at some point in time of defendants Lynch, Rearick and Kumro is immaterial.[3]  Furthermore, a person is not liable simply by virtue of his/her position in the chain of command because a subordinate committed a constitutional violation. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

Stated simply, the plaintiff's embarrassment for acting immaturely is not a basis for a constitutional violation. Perhaps the plaintiff should have considered the ramifications of his conduct before he assaulted McGunigle, pushed the refrigerator up against the door, hung a disturbing sign on the house door for his kids to see, and created such fear within the home that his kids ran out into the snow in their stocking bare feet.

---

[3] Plaintiff admits in his deposition that Lynch was never present at the scene and has been sued only because he passed along to Sgt. Kumro information reported to the police by plaintiff's ex-wife.

5

**NO EVIDENCE OF A CIVIL CONSPIRACY**

The plaintiff citation of boilerplate civil conspiracy is equally weak. It is not enough that the some of the defendants were present outside of the plaintiff's home or communicated to others the information reported to the police by the plaintiff's former wife and neighbor. At the outset, to prove liability under 42 U.S.C. 1985, the plaintiff must prove that the defendants: (1) engaged in a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection under the law, or the equal privileges and immunities under laws, (3) acted in furtherance of the conspiracy and (4) deprived such person or class of persons the exercise of any right or privilege. Griffin v. Beckenridge, 403 U.S. 88, 102-103, 91 S. Ct. 1790 (1971). Furthermore, Section 1985 is not a general federal tort law. Id at 102. Rather, the plaintiff must demonstrate "some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirator's action." United Bd. of Carpenter & Joiner of America, Local 610 v. Scott, 463 U.S. 825, 832-833, 103 S. Ct. 3352 (1983); New York State Organization of Women, et al. v. City of New York, 886 F.2d 1339 (2d Cir. 1989).

The plaintiff's reliance on the Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) case is misplaced because that case dealt directly with racial discrimination. Furthermore, the facts of that case involved the liability of a private entity, the restaurant that refused to serve a white customer because she was accompanied by black students.

In the present case, there is no evidence of a conspiracy to violate the plaintiff's rights because of a racial or class based animus. The un-refuted facts show that the plaintiff's ex-wife contacted the state police to report what she perceived to be a

dangerous situation involving the questionable mental stability of her husband. (Facts, ¶¶ 17-38). The state police and Enfield police responded, as expected, to ascertain if any danger existed. Irrespective of the plaintiff's personal belief that his conduct did not justify a psychological evaluation and EAP counseling, that alone does not establish a civil conspiracy. The defendants remind the court that the plaintiff is a sworn police officer who carries a loaded weapon and must be physically and mentally ready to respond to potentially stressful situations. The facts presented to Colonel Barry along with the inability of the police to contact Waananen justify his decision to make sure that Waananen was mentally stable. The court can just imagine the lawsuit that would have occurred had the police simply dismissed the matter and Waananen eventually "gone off" and hurt someone.

Ironically, when a plaintiff, such as Neal Waananen, has no real case, the word conspiracy pops up in a catch-all attempt to create a claim where none otherwise exists.

### **PLAINTIFF DOES NOT ADDRESS OR REFUTE THE FACTS SHOWING THAT THE DEFENDANT ACTED IN GOOD FAITH BASED ON THE INFORMATION THAT WAS AVAILABLE**.

The plaintiff mistakenly believes that because he does not think there was cause for him to undergo a psychological examination, that automatically eliminates the discretionary nature of the decision that Colonel Barry had to make on January 31, 2000. Except to accuse his ex-wife and neighbor of providing false information to the police, the plaintiff has no evidence that defendant Barry knew the information was false or that defendant Barry's perception of the circumstances was unreasonable. Defendant Barry reminds the court that his responsibility extended not only to make sure that the plaintiff

was safe and not a danger to himself, but also to make sure that the plaintiff could perform his job without a risk to the public. The plaintiff's acts of barricading himself in the house with a refrigerator against the door, assaulting a neighbor in a manner that caused his children to run out of the house into the snow in their stocking feet, his failure to answer the phone, his decision not to go after his daughter in favor of looking at dog pictures on the Internet with his son, and the note he left on the door for his children to see because he was angry at his wife for taking the children out of town, are hardly the sound judgments of person who is entrusted with a firearm. (Facts, ¶¶ 8-38).

More importantly, the law does not require that defendant Barry be perfect in his decisions. It provides for the exercise of discretion. For these reasons, the defendants renew their claim of qualified immunity that is fully briefed in their initial submission in support of summary judgment.

## **CONCLUSION**

The plaintiff own conduct, and not a willful or reckless animus towards the plaintiff's rights, prompted defendant Barry to act as he did. The other defendants had no involvement in any violation of the plaintiff's constitutional rights as set forth in the evidence. The plaintiff's factual assertions are so weak as not to satisfy the summary judgment standard set forth by the Supreme Court in <u>Reeves v. Sanderson Plumbing</u>, 530 U.S. 133, 120 S. Ct. 2097 (2000).

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
email: Joseph.Jordano@po.state.ct.us

## CERTIFICATION

The undersigned hereby certifies that on the 10th day of May, 2004, a true and accurate copy of the foregoing was sent by United State mail, postage prepaid, to the following:

John R. Williams, Esq.
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

_____
 Joseph A. Jordano
Assistant Attorney General