UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEAL E. WAANANEN : | |
| : | |
| VS. : | NO. 3:02CV2307(JBA) |
| : | |
| TIMOTHY BARRY, : | |
| EDWARD LYNCH, : | |
| JOHN REARICK and : | |
| SUE KUMRO : | MAY 22, 2004 |

**BRIEF IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT**

The defendants have moved on various grounds to strike the following paragraphs from the plaintiff's Local Rule 56(a)2 Statement:

    4. Defendant Kumro's obligation as the head of EAP was to be an advocate for the plaintiff when he was referred to EAP. (Plaintiff's sworn interrogatory answers, ¶ 1) ["Foundation and relevancy"]

    5. In violation of her obligations as head of EAP, defendant Kumro simply passed on unsubstantiated third-hand information concerning the plaintiff to defendant Lynch while they were working together on a police funeral. (Ibid.) ["Speculation, improper opinion and hearsay"]

    6. Defendants Barry, Lynch and Rearick personally participated at the plaintiff's residence in the events alleged in the Complaint. (Id. ¶ 3) ["Vague, foundation and improper opinion"}

    7. Although there was no factual or legal basis for doing so, defendant Barry personally ordered the plaintiff to be subjected to a psychiatric examination over his objection. As a result, other state

police officers were ordered to transport the plaintiff involuntarily to a psychiatric facility.  (Ibid.) ["Improper opinion"]

8. When defendant Barry personally questioned the plaintiff at the plaintiff's residence, defendant Barry became visibly upset because it was apparent that he realized there was nothing wrong with the plaintiff, there was no justification for the police procedures he had ordered, and he himself ordered the plaintiff to be involuntarily transported for a psychiatric examination as a means of saving face.  (Id. ¶ 4) ["Relevancy and foundation"]

12. Defendant Rearick personally ordered the plaintiff to contact Peter Curley at Public Safety EAP after his release from the hospital.  (Ibid.) ["Relevancy, speculation and foundation"]

15. The defendants caused the police search of the plaintiff's residence and the seizure of his personally-owned off-dutyh .380 caliber pistol and .22 caliber rifle.  (Id. ¶ 8) ["Foundation and speculation"]

18. The plaintiff tried very hard to save his marriage, but his ex-wife had absolutely no interest in doing so.  She rejected his proposals for marriage counseling.  Although she was a professional accountant, she refused to work outside the home and then complained bitterly about the family's resulting economic difficulties.  (Plaintiff's deposition transcript, pp. 70-78) ["Relevancy, foundation and speculation"]

19. Trooper Tilley had been angry and bitter against the plaintiff ever since a golfing incident in 1998 in which they had a rules disagreement, the golf pro supported the plaintiff's interpretation, and as a result Tilley lost the match.  (Id. pp. 83-85) ["Relevancy, speculation, and improper opinion"]

21. Mr. McGunigle, a former neighbor, then telephoned the state police, refused to speak on a taped line, and was deceptive.  The trooper who took the call considered him to be a crackpot.  (Id. pp. 91-92) ["Hearsay, foundation, speculation and improper opinion"]

22. Later that afternoon, McGunigle came to the plaintiff's house and, after a discussion with the plaintiff, acknowledged that the plaintiff's ex-wife had lied to him about the plaintiff. He recognized that the plaintiff, who had just purchased new contact lenses and had his hair cut that day, was not in any way a danger to himself or others. He apologized to the plaintiff for having called the State Police. (Id. pp. 99-102) The plaintiff then telephoned the State Police and assured them that all was well. (Id. pp. 104-05) ["Hearsay and foundation"]

26. After meeting with the plaintiff in his house, Lieutenants Davoren and Smith were entirely satisfied with the plaintiff's responses, with his son's responses, and that nothing inappropriate was going on. (Id. pp. 198-99) ["Hearsay, speculation, foundation and improper opinion"]

33. Defendant Barry became obviously upset that he had been misled and, to cover his embarrassment, ordered the plaintiff to a psychiatric hospital. The plaintiff protested. Defendant Barry responded that it was an order and must be obeyed. (Id. p. 217) ["Improper opinion and foundation"]

34. Defendant Lynch during these events was not present, but was aware of all that was going on. He had been in a position to stop these things from happening, simply by conducting an independent investigation as he should have, but did not do so and thereby proximately caused the misconduct of which the plaintiff was the victim. (Id. pp. 219-20) ["Hearsay and foundation"]

37. The plaintiff was discharged by the medical personnel. The psychiatrist stated to him: "You don't need a psychiatrist, you need a good divorce attorney." (Id. p. 236) ["Hearsay, foundation and relevancy"]

39. Defendant Kumro could have prevented these things from happening to the plaintiff but chose not to do so. (Id. pp. 238-39) ["Speculation"]

40. Defendant Kumro received a call from a fourth-hand party about an incident involving a Master Sergeant. She elected to take it on face value and passed this confidential information on

to a Major in the State Police, leading directly to the plaintiff's injuries. Defendant Kumro never paged the plaintiff, never spoke with the plaintiff. (Id. p. 239) ["Speculation, foundation, hearsay and improper opinion"]

41. The plaintiff suffered undocumented disciplinary action and financial losses as a result of the actions of the defendants. (Id. p. 247) ["Vague, foundation"]

There is nothing in the Local Rules of this court permitting a motion of the kind here at hand, and the defendants have not taken the trouble to furnish a memorandum of law in support of their motion.

The starting point in attempting to analyze this motion is the fundamental proposition that "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Cf., McMillan v. Experian, 170 F. Supp. 2d 278, 281 (D. Conn. 2001); McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996); Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1990); Tetra Technologies, Inc. v. Harter, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993). "Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). "Evidence presented to defeat a summary judgment motion need not be in admissible form, but it must be admissible in content." Payne v. Pauley, 337 F.3d 767, 775 fn. 3 (7th Cir. 2003).

The plaintiff will attempt briefly to consider each of the defendants' objections individually:

4. Defendant Kumro's obligation as the head of EAP was to be an advocate for the plaintiff when he was referred to EAP. (Plaintiff's sworn interrogatory answers, ¶ 1) ["Foundation and relevancy"] The foundation is the plaintiff's personal knowledge as a supervisory officer in the Connecticut State Police. The relevance is the fact that the defendant had a duty to the plaintiff.

5. In violation of her obligations as head of EAP, defendant Kumro simply passed on unsubstantiated third-hand information concerning the plaintiff to defendant Lynch while they were working together on a police funeral. (Ibid.) ["Speculation, improper opinion and hearsay"] There is nothing speculative about this assertion of fact. There is no opinion involved. No out-of-court statement is here offered for its truth, so there is no hearsay.

6. Defendants Barry, Lynch and Rearick personally participated at the plaintiff's residence in the events alleged in the Complaint. (Id. ¶ 3) ["Vague, foundation and improper opinion"] There is nothing vague about this explicit assertion of personal involvement. Its foundation is the plaintiff's personal knowledge. There is no opinion involved.

7. Although there was no factual or legal basis for doing so, defendant Barry personally ordered the plaintiff to be subjected to a psychiatric examination over his objection. As a result, other state police officers were ordered to

transport the plaintiff involuntarily to a psychiatric facility.  (Ibid.) ["Improper opinion"] The opinion involved here is simply the assertion that "there was no...legal basis for doing so...."  That is a decision for the court to make.

8.  When defendant Barry personally questioned the plaintiff at the plaintiff's residence, defendant Barry became visibly upset because it was apparent that he realized there was nothing wrong with the plaintiff, there was no justification for the police procedures he had ordered, and he himself ordered the plaintiff to be involuntarily transported for a psychiatric examination as a means of saving face.  (Id. ¶ 4) ["Relevancy and foundation"] The foundation is the plaintiff's personal knowledge.  The relevance is that this is exactly the contested issue in this case.

12.  Defendant Rearick personally ordered the plaintiff to contact Peter Curley at Public Safety EAP after his release from the hospital.  (Ibid.) ["Relevancy, speculation and foundation"] Defendant Rearick's personal involvement obviously is an issue in the case, so the statement is relevant.  The foundation is the plaintiff's personal knowledge, so there is no speculation involved.

15.  The defendants caused the police search of the plaintiff's residence and the seizure of his personally-owned off-dutyh .380 caliber pistol and .22 caliber rifle.  (Id. ¶ 8) ["Foundation and speculation"] The foundation is the

plaintiff's personal knowledge, so there is nothing speculative about the assertion.

18. The plaintiff tried very hard to save his marriage, but his ex-wife had absolutely no interest in doing so. She rejected his proposals for marriage counseling. Although she was a professional accountant, she refused to work outside the home and then complained bitterly about the family's resulting economic difficulties. (Plaintiff's deposition transcript, pp. 70-78) ["Relevancy, foundation and speculation"] The statement is relevant because the defendants have devoted a significant portion of their motion and supporting documents to attacking the plaintiff on this precise issue. The foundation is the plaintiff's personal knowledge, so there is nothing speculative in the statement.

19. Trooper Tilley had been angry and bitter against the plaintiff ever since a golfing incident in 1998 in which they had a rules disagreement, the golf pro supported the plaintiff's interpretation, and as a result Tilley lost the match. (Id. pp. 83-85) ["Relevancy, speculation, and improper opinion"] The relevance is the impact of these facts on the credibility of Tilley's claims about the plaintiff. The statement is based on plaintiff's personal knowledge and represents fact, not opinion. As such, it is not speculative.

21. Mr. McGunigle, a former neighbor, then telephoned the state police, refused to speak on a taped line, and was deceptive. The trooper who took the call considered him to be a crackpot. (Id. pp. 91-92) ["Hearsay, foundation,

speculation and improper opinion"] The statement is based on plaintiff's personal knowledge, so it is not hearsay. The opinion of the trooper is relevant, not improper and not speculative, because the reaction of the police who received the report is relevant to the reasonableness of the defendants' consequent actions.

22. Later that afternoon, McGunigle came to the plaintiff's house and, after a discussion with the plaintiff, acknowledged that the plaintiff's ex-wife had lied to him about the plaintiff. He recognized that the plaintiff, who had just purchased new contact lenses and had his hair cut that day, was not in any way a danger to himself or others. He apologized to the plaintiff for having called the State Police. (Id. pp. 99-102) The plaintiff then telephoned the State Police and assured them that all was well. (Id. pp. 104-05) ["Hearsay and foundation"] The foundation is the plaintiff's personal knowledge; accordingly, it is not hearsay.

26. After meeting with the plaintiff in his house, Lieutenants Davoren and Smith were entirely satisfied with the plaintiff's responses, with his son's responses, and that nothing inappropriate was going on. (Id. pp. 198-99) ["Hearsay, speculation, foundation and improper opinion"] The reaction of Davoren and Smith is relevant to the reasonableness of the subsequent actions of the defendants. The foundation is the plaintiff's personal knowledge, so the assertion is neither hearsay nor speculation. No opinion is presented here.

33. Defendant Barry became obviously upset that he had been misled and, to cover his embarrassment, ordered the plaintiff to a psychiatric hospital. The plaintiff protested. Defendant Barry responded that it was an order and must be obeyed. (Id. p. 217) ["Improper opinion and foundation"] This is not a statement of opinion but a statement of fact, based on the plaintiff's personal knowledge from having been present at the time.

34. Defendant Lynch during these events was not present, but was aware of all that was going on. He had been in a position to stop these things from happening, simply by conducting an independent investigation as he should have, but did not do so and thereby proximately caused the misconduct of which the plaintiff was the victim. (Id. pp. 219-20) ["Hearsay and foundation"] The foundation is the plaintiff's personal knowledge, as well as his long experience as a supervisor with the State Police. Accordingly, the statement is not hearsay.

37. The plaintiff was discharged by the medical personnel. The psychiatrist stated to him: "You don't need a psychiatrist, you need a good divorce attorney." (Id. p. 236) ["Hearsay, foundation and relevancy"] The opinion of the examining psychiatrist that the plaintiff clearly had no psychiatric problem is highly relevant to the reasonableness of the defendants' actions. The foundation for the statement is the plaintiff's personal presence when it was said. Whether or not it is hearsay, it may be considered in opposition to the summary

judgment motion because it is capable of being presented in admissible form at trial through the psychiatrist's testimony.

39. Defendant Kumro could have prevented these things from happening to the plaintiff but chose not to do so. (Id. pp. 238-39) ["Speculation"] The statement is not speculative because it is based on the plaintiff's personal knowledge as a supervisor within the State Police.

40. Defendant Kumro received a call from a fourth-hand party about an incident involving a Master Sergeant. She elected to take it on face value and passed this confidential information on to a Major in the State Police, leading directly to the plaintiff's injuries. Defendant Kumro never paged the plaintiff, never spoke with the plaintiff. (Id. p. 239) ["Speculation, foundation, hearsay and improper opinion"] The foundation is the plaintiff's personal knowledge. The statement is an assertion of fact, and is neither speculative nor opinion nor hearsay.

41. The plaintiff suffered undocumented disciplinary action and financial losses as a result of the actions of the defendants. (Id. p. 247) ["Vague, foundation"] The foundation is the plaintiff's personal knowledge as well as his long experience as a State Police supervisor. The statement is specific and certainly not vague.

The motion to strike should be denied.

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Joseph A. Jordano, Esq., Assistant Attorney General, P. O. Box 120, Hartford, CT 06141-0120.

_____
JOHN R. WILLIAMS